No. 13C-380
(Judge Thomas C. Wheeler)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AGILITY DEFENSE & GOVERNMENT
SERVICES, INC.,
Plaintiff,

v.

UNITED STATES OF AMERICA,
Defendant.

## DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX

STUART F. DELERY
Assistant Deputy Attorney General

BRYANT G. SNEE
Acting Director

MARTIN F. HOCKEY
Assistant Director

OF COUNSEL:

NATHAN J. BANKSON
Major, U.S. Army
Litigation Division
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060
Telephone: (703) 693-1092
Fax. (703) 696-8178

PHYLLIS JO BAUNACH
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
pj.baunach@usdoj.gov
Telephone: (202) 307-5832
Facsimile: (202) 514-8640

November 6, 2013                    Attorneys for Defendant

## TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES.................................................................................2

STATEMENT OF THE CASE...................................................................................3

    I.    Nature of the Case .......................................................................................3

    II.    Statement of Facts .......................................................................................4

ARGUMENT ...........................................................................................................8

    I.    Standard Of Review ....................................................................................8

    II.    The Government Made No Changes To The Contract That Are Covered
         By The Changes Clause ..............................................................................10

    III.    Agility Accepted The Risk For Increased Costs Of New Production
         Weapons......................................................................................................12

    IV.    Agility's Continued Performance After April 7, 2010, Was Not A
         Constructive Change To The Contract ........................................................14

    V.    Agility Fails To Allege Facts To Support A Claim That Performance Was
         Impossible Or Commercially Impracticable................................................16

    VI.    The Court Lacks Jurisdiction To Entertain Agility's Claim of Unjust
         Enrichment..................................................................................................17

    VII.    Agility's Reliance Upon *Granite Construction* and *Blount Brothers* Is
         Inapposite....................................................................................................19

CONCLUSION.........................................................................................................22

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................ 9

*Anthony P. Miller, Inc. v. United States*,
   161 Ct.Cl. 455, cert.denied,
   375 U.S. 879 (1963)........................................................................................ 16, 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................ 9

*Baltimore Ohio Railroad Co. v. United States*,
   261 U.S. 592 (1923).............................................................................................. 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................ 9

*Blount Brothers Corp. v. United States*,
   872 F.2d 1003 (Fed. Cir. 1989)................................................................. 19, 21, 22

*Celotex Corp. v. United States,,*
   477 U.S. 317 (1986)........................................................................................... 9, 10

*Cross Country Industries, Inc. v. United States*,
   231 Ct. Cl. 899 (1982) .......................................................................................... 18

*Dalton v. Cessna Aircraft Co.*,
   98 F.3d 1298 (Fed. Cir. 1996)............................................................................... 13

*Edwards v. United States*,
   80 Ct.Cl. 118 (1934) ............................................................................................ 16

*Godwin v. United States*,
   338 F.3d 1374 (Fed. Cir. 2003)............................................................................... 8

*Gould v. United States*,
   67 F.3d 925 (Fed. Cir.1995)................................................................................. 18

*Hercules, Inc. v. United States,*
   516 U.S. 417 (1996) ................................................................................................ 18

*International Air Response v. United States,*
   75 Fed. Cl. 604 (2007) ........................................................................................... 18

*International Data Products Corp. v. United States,*
   492 F.3d 1317 (Fed. Cir. 2007) ........................................................................ 14, 15

*ITT Arctic Services, Inc. v. United States,*
   524 F.2d 680 (Ct. Cl. 1975) .................................................................................. 13

*Jennie-O Foods, Inc. v. United States,*
   580 F.2d 400 (Ct. Cl. 1978) .................................................................................. 16

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ................................................................................................. 9

*Miller Elevator Co. v. United States,*
   30 Fed. Cl. 662 (1994) ........................................................................................... 15

*Natus Corp. v. United States,*
   371 F.2d 450 (1967) ............................................................................................... 16

*Reynolds v. Army & Air Force Exch. Serv.,*
   846 F.2d 746 (Fed. Cir. 1988) ............................................................................... 18

*Spirit Leveling Contractors v. United States,*
   19 Cl. Ct. 84 (1989) ............................................................................................... 10

*Sweats Fashions, Inc. v. Pennill Knitting Co.,*
   833 F.2d 1560 (Fed. Cir. 1987) ............................................................................... 9

*Trauma Services Group v. United States,*
   104 F.3d 1321 (Fed. Cir. 1997) ............................................................................. 18

*Trinco Investment Co. v. United States,*
   722 F.3d 1375 (Fed. Cir. 2013) ............................................................................... 9

*United States v. Spearin,*
   248 U.S. 132 (1918) ............................................................................................... 13

*Whitlock Corp. v. United States,*
  159 F.Supp. 602, 606, 141 Ct.Cl. 758, 763, *cert. denied,*
  358 U.S. 815 (1958)......................................................................................................... 16


STATUTES

28 U.S.C. § 1491(a)(1) (1994) ........................................................................................ 18


REGULATIONS

48 C.F.R. § 16.202-1 (2000)........................................................................................... 13

FAR 52.216-22 ......................................................................................................... passim

FAR 52.243-1 ............................................................................................... 2, 3, 10, 12

ADMINISTRATIVE DETERMINATIONS

*Granite Construction Co.,*
ENGBCA No. 4172, 89-2 BCA ¶ 21683, 1989 WL 29822 (Eng. B.C.A.) ......................19, 20, 21

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AGILITY DEFENSE & GOVERNMENT )
SERVICES, INC., )
                                      )
          Plaintiff, )
                                        )
          v. )                 **No. 13C-380**
                                        )        **(Judge Thomas C. Wheeler)**
UNITED STATES OF AMERICA, )
                                        )
          Defendant. )

**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND APPENDIX**

Pursuant to Rules 12(6)(b) and 56 of the Rules of the United States Court of Federal

Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the

complaint for failure to state a claim upon which relief can be granted, or, in the alternative, enter

summary judgment in the Government's favor.  The undisputed material facts show that Agility

entered into a fixed price contract for the delivery of weapons, for which it bore the risk of

increased costs; that the United States made no changes to the contract; did not change the design

specifications of the weapons sought under the contract; did not constructively change the

contract; and did not create conditions that rendered the performance of the contract impossible

or commercially impracticable.  Thus, Agility cannot meet its burden, as a matter of law, to

demonstrate that it is entitled to an equitable adjustment.  In support of this motion to dismiss,

and opposition to Agility's  motion for summary judgment, defendant relies upon the complaint

and attachments, plaintiff's motion for summary judgment and appendix, this brief, and our

appendix.

## **STATEMENT OF THE ISSUES**

1.      Whether Agility Defense & Government Services, Inc. (Agility) is entitled to an equitable adjustment in the amount of $1,369,377.47, under Delivery Order D006, that was issued pursuant to contract W91CRB-04-D-0025, a fixed-price, indefinite-delivery, indefinite quantity (IDIQ) type contract with the Department of the Army (Army), based upon the Army's alleged changes to the contract, including alleged "changed design specifications," and duty to reimburse Agility for its additional costs, pursuant to FAR 52.243-1 Changes – Fixed Price (AUG 1987).  Compl. ¶¶ 20, 23, 24.[1]

2.      Whether Agility's continued performance of the contract after April 7, 2010, when, pursuant to FAR 52.216-22, Agility was "not required to make any deliveries under the contract after two years after original delivery date," constitutes a constructive change to the contract for which Agility is entitled to an equitable adjustment in the amount of $1,369,377.47. Compl. ¶ 22.

3.      Whether Agility is entitled to an equitable adjustment in the amount of $1,369,377.47, based upon alleged "circumstances that were impossible and commercially impracticable." Compl. ¶ 23.

---

[1] "Compl. at ¶ __" refers to the paragraph within Agility's complaint, filed on June 7, 2013.  Pl. Mot., p. ___" refers to the ECF page number of Agility's motion for summary judgment, filed on September 6, 2013. "Pl. Mot., Exhibit A, p. ___" refers to the ECF page number of Exhibit A, attached to Agility's motion for summary judgment. "Pl. Mot., Attachment ___, p. ___" refers to the ECF page number of the numbered attachment appended to Agility's motion for summary judgment. "Def. App. ___" refers to the page of defendant's appendix filed with our motion.

4.      Whether Agility is entitled to an equitable adjustment in the amount of

$1,369,377.47, because the Government received "the benefit of the new production SPG-9

variants" at an increased cost to Agility.  Pl. Mot., p. 2.

## STATEMENT OF THE CASE

### I.      Nature Of The Case

Plaintiff, Agility Defense & Government Services, Inc., formerly Taos (Agility) seeks an

equitable adjustment in the amount of $1,369,377.47, for costs incurred in procuring and

delivering SPG-9 weapons to the Army, under fixed price Contract W91CRB-04-D-0025,

Delivery Order 006.  (Compl. at ¶1, and Prayer).  Agility alleges changes under FAR 52.243-1,

including changed design specifications (Compl. ¶¶ 20, 24); constructive change (Compl. at ¶

22); and impossibility and commercial impracticability.  (Comp. at ¶23).

At the motion-to-dismiss stage, Agility is not required to prove its case.  But its pleadings

must allege facts that, if later proven, would entitle it to relief.  *See* RCFC 8(a) (requiring that the

complaint contain allegations "showing that the pleader is entitled to relief").  Because, as

discussed below, Agility fails to allege sufficient facts to support its claims, there can be no

recovery.

In its motion for summary judgment, Agility argues that because "[t]he Government

received the benefit of new production SPG-9 variants," it should be required to pay Agility its

unreimbursed costs for providing the new production SPG-9 weapons.  Pl. Mot., p. 3.  Contrary

to Agility's argument, however, the Government received only the performance required under

the contract.  That performance pursuant to the contract, leaves no basis for recovery for Agility

- 3 -

under these circumstances.  Agility offered to provide a particular number of weapons at a particular price under a firm fixed-price contract and it bore the risk of price increases.  There is no legally cognizable justification or basis for Agility's claim.  Therefore, the Government respectfully requests that the Court dismiss Agility's complaint, or, in the alternative, deny Agility's motion for summary judgment.

## II.   <u>Statement of Facts</u>[2]

On May 21, 2004, Agility submitted a proposal in response to the solicitation pertaining to Contract W91CRB-04-D-0025.  Def. App. A8-A16.  With respect to CLIN 0003, which required "SPG-9, Recoilless Guns, 73mm,"Agility estimated a unit price of $10,476.35 for "[n]ew equipment."  Def. App. A12, A16.  In their proposal, Agility also stated that "[i]f new production is required because other DoD requirements receive priority on stock items, Taos will deliver new production weapons. Delivery of new production stocks will take approximately 120 days from approval of Export License."  Def. App. A15.

On July 12, 2004, the Government and Agility entered into Contract W91CRB-04-D-0025, an indefinite-delivery indefinite-quantity (IDIQ) contract, in which Agility agreed to deliver particular soviet style weapons to the United States, among which were "SPG-9

---

[2] Because we disagree with Agility's' statement of the facts, as set forth in Agility's brief, Pl. Mot., pp. 2-3, and Exhibit A, Ms. Chillcott's Affidavit, we provide a brief fact section to place the undisputed facts in their proper light.  For the purposes of this motion only, we agree with the facts that are supported by evidence, such as the contract and other documents. As discussed below, we disagree with statements that contain Agility's interpretation of the facts or amount to argument.  We also reserve the right to challenge each asserted fact in any subsequent proceeding.

Recoilless Gun, 73 mm." Pl. Mot., Exhibit A, p. 7; Attachment 1, pp. 13-14.  The contract stated

that the "proposed equipment may be new, new surplus, used, overhauled, or refurbished." *Id.* at

14.  The contract further stated that "[i]ndividual delivery orders issued under the basic contract

will be on a firm, fixed price basis." *Id.* At 14.[3]

The contract incorporated Far 52.216.22 INDEFINITE QUANTITY (Oct 1995), which

states:

> (d) Any order issued during the effective period of this contract and not
> completed within that period shall be completed by the Contractor within
> the time specified in the order. The contract shall govern the Contractor's
> and Government's rights and obligations with respect to that order to the
> same extent as if the order were completed during the contract's effective
> period; *provided*, that the Contractor shall not be required to make any
> deliveries under this contract after 2 years after original delivery date.

*Id.* at 28 (emphasis in original).

On December 7, 2007, the parties subsequently entered into Delivery Order D006, which

stated the quantity, unit price, and nature of the contract.  Pl. Mot., Attachment 2,  pp. 31-43.

Pursuant to Item 0004 of Delivery Order D006, Agility agreed to deliver  "SPG-9, 73mm

Smoothbore Recoilless Rifle to include the PGO-9 Optical 4x sight." *Id.* at 34.  Delivery Order

D006 incorporated the contract provision that the "proposed equipment may be new, new

surplus, used, overhauled, or refurbished." Pl. Mot., Exhibit A, p. 7; Attachment 1, p. 14.

Agility offered a firm fixed unit price of $5,864.00 per weapon for a total price of $1,319,400.00,

for the required 225 weapons. *Id.* at 34; Compl. ¶6.  The delivery date for the weapons was

---

[3]  In its motion, Agility states: "a) the Government awarded the Base Contract to DGS (Chillcott
Aff. at para. 3)." Pl. Mot., p. 2.  We agree with this statement, to the extent that it is supported by
the contract, which speaks for itself.

- 5 -

April 7, 2008. Pl. Mot., Attachment 2, p. 42. Pursuant to FAR 52.216-22, Agility's obligation to perform ceased on or about April 7, 2010.

Agility and the Government entered into Bilateral Modification P00004, with an effective date of April 1, 2010.[4] Def. App. A-34-A36. Bilateral Modification P00004 stated that "Taos will not meet the current delivery date" and that "[t]he revised delivery date is not yet known." Def. App. A36. Pursuant to Bilateral Modification P00004, Agility agreed to provide "20,000 YAK-B Links as consideration for late delivery," under Delivery Order D006. Modification 4 did not contain a specific delivery date. Def. App. A35-A36.

Agility failed to perform under the contract by the April 7, 2010 date.

Between April 1, 2010 and March 10, 2011, Agility failed to deliver the weapons required under Delivery Order D006. During that time frame, Agility and the Government continued to discuss performance of the contract. Some of the communications regarding these discussions are provided as attachments to Agility's motion. Pl. Mot., Attachments 3-6, pp. 45-99.

Based upon these discussions and Agility's inability to deliver the weapons, the parties mutually agreed to Bilateral Modification P00007[5] to "set firm delivery schedules," with an

_____

[4] In its motion, Agility states: "b) DGS's obligation to perform under the Base Contract was extinguished (id. at para. 6)." Pl. Mot., p. 2. We disagree with this statement and the information contained in paragraph 6 of Exhibit A, because they contain Agility's interpretation of the facts and argument.

[5] In its motion, Agility incorrectly refers to Bilateral Modification P00007, with an effective date of March 11, 2011, as "Modification 00006 ('Bilateral Modification')". Pl. Mot., Exhibit A, p. 9. Modification P00006, with an effective date of January 7, 2011, only revised delivery dates.

effective date of March 10, 2011.[6]  Pl. Mot., Attachment 7, pp.101-104.  In Box 14 of Bilateral

Modification P00007, Agility expressly waived its right under FAR 52.216-22; "regarding the

restriction on not requiring the contractor to make delivery after 2 years after the original

delivery date."[7]  Additionally, Bilateral Modification P00007 described: 1) the delivery dates as

"firm dates subject only to the requirements for actions by the USG;" 3) stated that the variant of

the SPG-9 weapons that Agility offered was "SPG-9/ 73 mm Arsenal Anti-Tank Grenade

Launcher ATGL-H with Optical Sight PGOK-9.  NEW PRODUCTION;" and 3) set firm

delivery dates.  There is no mention of a price increase in Bilateral Modification P00007.  Pl.

Mot., Attachment 7, pp.102-104.

 Upon delivery of the weapons,[8] Agility submitted a request for equitable adjustment, Pl.

---

Def. App. 37.

[6]  In its motion, Agility states: "(c) after DGS's obligation to perform was extinguished, the Government induced DGS to perform under the delivery Order with a promise to 'seriously consider' the REA (id at para. 7)."  Pl. Mot. p. 3.  We disagree with this statement and the information contained in paragraph 7 of Exhibit A, because they contain Agility's interpretation of the facts and argument.

[7]  In its motion, Agility states: "(d) after DGS expressly reserved its right to submit the REA, which it expected to be 'seriously consider[ed],' the Government modified the delivery order to provide for the delivery of differing and more expensive goods (id, at para's 8, 9)."  )."  Pl. Mot., p. 3.  We disagree with this statement and the information contained in paragraphs 8 and 9 of Exhibit A, because they contain Agility's interpretation of the facts and argument.

[8]  In its motion, Agility states: "(e) DGS delivered differing and more expensive goods, per the Bilateral Modification (id. at para. 10);" and"(f) the Government accepted the differing and more expensive goods (id.)  Pl. Mot., p. 3.  We agree that Agility delivered SPG-9 weapons, but disagree with these statements and the information contained in paragraph 10 of Exhibit A, because they contain Agility's interpretation of the facts and argument.

- 7 -

Mot., Attachment 9, pp.108-131, which the contracting officer denied on July 10, 2012. *Id.* 135-136.[9]  Agility filed a Certified Claim on August 7, 2012.  Pl. Mot., Attachment 10, pp 133-134.

The contracting officer denied Agility's Certified Claim on January 16, 2013.  Pl. Mot.,

Attachment 11, pp. 169-173.

On June 7, 2013, Agility filed a complaint in this Court.  On September 6, 2013, Agility

filed a motion for summary judgment, before defendant had an opportunity to file a response to

the complaint.

## **ARGUMENT**

The undisputed material facts demonstrate that Agility entered into a fixed price contract

for which it bore the risk of increased costs and that the Government made no changes to the

contract for which Agility is entitled to an equitable adjustment.  Accordingly, as a matter of law,

the Court should dismiss the complaint.

## I.   **Standard Of Review**

RCFC 12(b)(6) authorizes the dismissal of a complaint if, assuming the truth of its

allegations, it fails to state a claim upon which relief can be granted as a matter of law.  A motion

to dismiss pursuant to RCFC 12(b)(6) should be granted when a plaintiff alleges facts that do not

entitle it to a legal remedy.  *See Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003).

Under RCFC 8(a), a pleading must contain "a short and plain statement of the claim showing

---

[9]  In its motion, Agility states: "(g) DGS submitted the REA, which was rejected by the Government (Id. at para. 11)." Pl. Mot., p. 3.  We agree with this statement, to the extent that it is supported by the document contained in Attachment 9, which speaks for itself.

that the pleader is entitled to relief." The United States Supreme Court has explained that a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), with "facts sufficient to nudge 'claims across the

line from conceivable to plausible.'" *Trinco Investment Co. v. United States*, 722 F.3d 1375,

1380 Fed. Cir. (2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

allegations of the complaint must show more than "a sheer possibility that a defendant has acted

unlawfully." *Id.*  The Court should assume that well-pleaded facts alleged in the complaint are

true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). However, a

complaint's legal conclusions are not entitled to deference. *See id.* (quoting 2A Jeremy C.

Moore, *Moore's Federal Practice*, ¶ 12.07 [2.-5] (2d ed. 1992)).

Pursuant to RCFC 56, summary judgment as to any claim is appropriate when there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law. *See* RCFC 56(c); *see also Celotex Corp. v. United States*, 477 U.S. 317, 322 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute is "genuine" only if the

evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Anderson,* 477 U.S. at 248; *see also Sweats Fashions, Inc. v. Pennill Knitting Co.*, 833 F.2d

1560, 1562 (Fed. Cir. 1987). Thus, when the record as a whole would not lead a rational trier of

fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita Electric

Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *accord Celotex,* 477 U.S. at

327. A fact is material if it could affect the outcome of the suit, and the substantive law applicable to the case determines its materiality. *See, e.g., Spirit Leveling Contractors v. United States*, 19 Cl. Ct. 84, 89 (1989).

## II.    The Government Made No Changes To The Contract That Are Covered By The Changes Clause

In its complaint, Agility alleges that through Bilateral Modification P00007, "the contract was modified to require DGS to provide 225 new production 'SPG-9/73 mm Arsenal Anti-Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9,' rather than the originally designated new surplus 'SPG-9, 73mm Smoothbore Recoilless Rifle with the PGO-9 Optical 4x sight." Compl. ¶ 19. Additionally, Agility alleges that its offer to provide "new production" rather than "new surplus" weapons constituted a change to the contract. Compl. ¶¶ 18, 19. Agility characterizes the requirements of this bilateral modification as a "changed design specification," which resulted in additional costs, for which it seeks reimbursement. Compl. ¶ 20.

FAR 52.243-1 Changes – Fixed Price (AUG 1987) states, in part:

> (a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:
>
> (2) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.
>
> (2) Method of shipment or packing.
>
> (3) Place of delivery.

Bilateral Modification P00007 did not change the design specifications of the weapons, but stated, among other things, the variant and supplier of the SPG-9 weapons that Agility

- 10 -

offered to procure.  The supplier was to be Arsenal and the weapons were to be "SPG-9/ 73 mm

Arsenal Anti-Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9.  NEW

PRODUCTION."  Pl. Mot., Attachment 7, p. 102.  Agility itself determined the variant and

supplier of the weapons, not the Government.

        In the attached declaration, Mr. Terry McBee, Contracting Officer for Agility's contract,

describes the background and terminology used in Bilateral Modification P00007, which he

drafted.  Def. App. A1-A7.  Mr. McBee explains that Agility provided the name of the SPG-9

weapons that was included in Bilateral Modification P00007, "SPG-9/ 73 mm Arsenal Anti-Tank

Grenade Launcher ATGL-H with Optical Sight PGOK-9."  Def. App. A3, ¶¶ 11-12 .  He notes

that Agility was required to identify the supplier and the variant of the weapons it would obtain

for the End User Certificate (EUC), "a document needed by the Bulgarian Government in order

to grant an export license used to transport weapons between countries."  Def. App. A2, ¶ 9,

A25.  In the EUC, Agility stated that it would obtain the weapons from a manufacturer, "Arsenal

JSC, 100 Rozova Dolina St., 6100 Kazanlak, Bulgaria (manufacture)" and identified the

nomenclature for this subcontractor's version of the SPG-9 as, "225 SPG-9/ 73mm Arsenal Anti-

Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9."  Def. App. A3, ¶11; A5, A6.

Mr. McBee states that the weapons that Agility offered to procure in 2011 "were nothing more

than a variant of the original Hungarian SPG-9 weapons that Agility had offered to provide in the

Delivery Order  (DO) in December 2007."  Def. App. A3, ¶13.  The weapons may have been

described slightly differently in DO006 and Bilateral Modification P00007.  However, as Mr.

McBee states, "The difference in terminology describing the weapons in the DO and in Bilateral

Modification P00007 merely reflects the change in the source of the weapons to the new subcontractor, Arsenal, and identifies the specific name used by Arsenal for marketing its SPG-9 weapons." Def. App. A3, ¶14. Additionally, as he states in his declaration, Mr. McBee "used the same description of the weapons and the source of the weapons that Agility provided for the EUC in Bilateral Modification P00007, in order to ensure consistency between the wording of the EUC and the wording of Bilateral Modification P00007." Def. App. A3, ¶12.

Additionally, the Government did not change the contract by the inclusion of "new production" in Bilateral Modification P00007. The contract stated that the "proposed equipment may be new, new surplus, used, overhauled, or refurbished." Exhibit A, Attachment 1, p. 14. The Government never wavered from this requirement and never unilaterally required Agility to complete the contract with new production weapons. As described in Mr. McBee's Declaration, initially, Agility elected to procure new surplus weapons. When the weapons were unavailable, Agility elected to procure new production weapons from Arsenal in order to complete contract performance, and the parties mutually agreed to this alternative in Bilateral Modification P00007. Def. App. A3, ¶15; Pl. Mot., Attachment 7, pp. 101-104.

**III.    Agility Accepted The Risk For Increased Costs Of New Production Weapons**

Agility further alleges that Bilateral Modification P00007, which required "the procurement of new production SPG-9 variants with revised delivery terms" as "a change under FAR 52.243-1 because it constituted an increase in the cost and time required for performance that required the CO to make an equitable adjustment to the contract price." Compl. ¶24. However, the contract and Delivery Order D006 specified that the contract was on a firm fixed

price basis, for which Agility clearly accepted the risk of performance.

By definition, a firm fixed price contract is one that "provides for a price that is not subject to any adjustment on the basis of the contractor's cost experience." 48 C.F.R. § 16.202-1 (2000). This contract type places upon the contractor maximum risk and full responsibility for all costs and resulting profit or loss, providing a maximum incentive for the contractor to control costs and perform effectively while imposing a minimum administrative burden upon the contracting parties. *Id.*; *see also*, *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996) ("Because fixed price contracts do not contain a method for varying the price of the contract in even unforeseen circumstances, they assign the risk to the contractor that the actual cost of performance will be higher than the price of the contract."). Thus, the fact that there were unforeseen increases in the cost of performance does not alter the fact that those costs are to be borne by the contractor. *ITT Arctic Services, Inc. v. United States*, 524 F.2d 680, 691 (Ct. Cl. 1975) ("Where one agrees to do, for a fixed sum, a thing possible to be performed, he will not be excused or become entitled to additional compensation, because unforeseen difficulties are encountered.") (quoting *United States v. Spearin*, 248 U.S. 132, 136 (1918)).

Agility is responsible for the increased costs that were incurred when, as part of Bilateral Modification P00007, it elected to procure new production weapons because the contract and Delivery Order D006 stated that the procurement was for a firm fixed price that the Government had accepted. The contract expressly provided that the "proposed equipment may be new, new surplus, used, overhauled, or refurbished. " Pl. Mot. Attachment 1, p. 14. Agility encountered delays and difficulty in obtaining new surplus weapons from its first subcontractors, but was able

- 13 -

to procure new production weapons from another subcontractor, Arsenal, at an increased cost. Consequently, when it agreed to procure the weapons in December 2007, Agility expressly accepted the risk that performing the contract could cost more than it had anticipated.

Additionally, Agility was well aware of the possibility that new production weapons could cost more than new surplus weapons. In its proposal dated May 21, 2004, Agility listed the unit cost for "new" "SPG-9, Recoilless Gun, 73 mm" as $10,476.35. Def. App. A12, A16. However, in its response to Delivery Order D006 in December 2007, Agility elected to provide weapons at a unit cost of $5,864.00, a little more than half the unit cost of the "new" weapons that Agility offered in March 2011 in Bilateral Modification P00007. Thus, the likelihood that new production weapons would cost significantly more than Agility actually bid in response to Delivery Order D006 was foreseeable. Under the terms of the firm fixed price contract, Agility bore the risk that it might not be able to obtain the weapons at the lower unit cost and it is not now entitled to an equitable adjustment for its increased costs.

## IV. Agility's Continued Performance After April 7, 2010, Was Not A Constructive Change To The Contract

In its complaint, Agility alleges that its "continued performance, despite its having no obligation to do so pursuant to FAR. 52.216-22, constituted a constructive change to the terms of the contract" for which it should be compensated. Compl. ¶22. However, Agility fails to allege facts to support its claim of a constructive change.

"A constructive change occurs where a contractor performs work beyond the contract requirements without a formal order, either by an informal order or due to the fault of the Government." *International Data Products Corp. v. United States*, 492 F.3d 1317, 1325 (Fed.

- 14 -

Cir. 2007) (citing *Miller Elevator Co. v. United States*, 30 Fed. Cl. 662, 678 (1994)). Work that cannot be characterized as "additional" to the contract does not constitute a change, constructive, equitable, or cardinal. *Id.*

Here, pursuant to FAR 52.216-22, Agility's obligation to perform the contract ceased on April 7, 2010. However, in anticipation that Agility would not meet the delivery date, the parties executed Bilateral Modification P00004, with an effective date of April 1, 2010, six days before Agility's obligation to perform the contract ceased. Compl. ¶10, Def. App.A34-A36. In its complaint, Agility describes Bilateral Modification P00004 simply as an "agreement not to establish a delivery date." Compl. ¶ 10. However, Bilateral Modification P00004 did far more because Agility offered consideration for late delivery, and agreed to extending the time within which Agility could perform at no additional cost. Bilateral Modification P00004 stated that Agility "shall provide 20,000 YAK-B Links as consideration for late delivery. The links shall be delivered upon receipt of the export license." Def. App. A34. This bilateral modification, in which Agility agreed to provide consideration for late delivery at no additional cost to the Government, clearly shows Agility's intent to continue performance on the contract and the Government's expectation that Agility would perform the contract at no additional cost. This agreement amounts to Agility's tacit waiver of its right to cease performance after April 7, 2010.

Moreover, as discussed previously, in Bilateral Modification P00007, issued on March 11, 2011, Agility clearly and expressly waived its right to cease contract performance two years after the original delivery date. Pl. Mot., Attachment 1, p. 28. Thus, Agility fails to allege facts to support a claim that the Government constructively changed the contract by requiring Agility

- 15 -

to perform when it had the right to cease performance and its complaint should be dismissed.

**V.     Agility Fails To Allege Facts To Support A Claim That Performance Was Impossible Or Commercially Impracticable**

Agility alleges that Modification P00005, issued on December 22, 2010, "unilaterally established delivery dates that were both impossible and commercially impracticable." Compl.¶ 14. Additionally, Agility alleges that "the CO demanded performance under impossible and commercially impracticable terms by issuing Modification 05 and all subsequent scheduling demands" and "created a new schedule under circumstances that were impossible and commercially impracticable." Compl. ¶23. However, Agility fails to allege facts to support these claim and its claims are unfounded.

The fact that Agility incurred additional costs in performance of the contract because it procured new production weapons, rather than new surplus weapons does not render the contract impossible or commercially impracticable. "The commercial impracticability standard can be easily abused; thus this court has not applied it with frequency or enthusiasm. It is not invoked merely because costs have become more expensive than originally contemplated." *Jennie-O Foods, Inc. v. United States*, 580 F.2d 400, 409 (Ct. Cl. 1978) (citing *Natus Corp. v. United States*, 371 F.2d 450, 458 (1967); *Anthony P. Miller, Inc. v. United States*, 161 Ct. Cl. 455, *cert. denied*, 375 U.S. 879 (1963). *See also, Whitlock Corp. v. United States*, 159 F. Supp. 602, 606, 141 Ct. Cl. 758, 763, *cert. denied*, 358 U.S. 815, (1958); *Edwards v. United States*, 80 Ct. Cl. 118, 131 (1934)).

Here, Agility's claim that "Modification 5 and all subsequent scheduling demands" created conditions that rendered the contract impossible or impracticable to perform is simply

- 16 -

not true.  Despite its claim that the contract became commercially impracticable or impossible to perform because the Government issued unilateral Modification P00005, Agility delivered the 225 weapons, required pursuant to Delivery Order D006.  Pl. Mot., Attachment 8, p. 106. Subsequent changes to the delivery dates were executed through Bilateral Modification P00007, to which Agility agreed.  As stated previously, among its provisions, Bilateral Modification P00007 "set firm delivery schedules" to which both parties agreed.  Other than the conclusory statement that Modification P00005 created circumstances that were impossible and commercially impracticable, Agility fails to allege facts to state a claim for relief on an impracticability or impossibility cause of action.

The facts alleged by Agility simply do not entitle it to a legal remedy and the complaint should be dismissed.  A plain reading of the contract in conjunction with Agility's complaint shows that Agility assumed the risk for procurement and delivery of the weapons, and Agility, alone, bears the increased costs.

## VI.   The Court Lacks Jurisdiction To Entertain Agility's Claim of  Unjust Enrichment

In its motion for summary judgment, Agility contends that the Government is required to reimburse Agility for "as-of-yet unreimbursed costs" because the Government had a "duty to reimburse DGS for its costs after receiving the benefit of the bargain," Pl. Mot., p 2; "is in a substantially better position" than if Agility had ceased to perform the contract; and will otherwise receive "an inequitable result."  Pl. Mot., pp. 3-4.  However, Agility fails to offer any legal authority to support its position.  To the extent that Agility argues that the Government is not entitled to an unjust enrichment, its argument must fail because this Court lacks jurisdiction

to entertain claims of unjust enrichment.

The Tucker Act supplies the Court of Federal Claims with jurisdiction for claims against the United States founded upon the Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract. 28 U.S.C. § 1491(a)(1) (1994); *Gould v. United States,* 67 F.3d 925, 928 (Fed. Cir. 1995). The party invoking jurisdiction has the burden to show compliance with the Tucker Act. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed. Cir. 1988). Jurisdiction based upon a contract "extends only to contracts either express or implied in fact, and not to claims on contracts implied in law." *Hercules, Inc. v. United States,* 516 U.S. 417, 424 (1996).

Agility's presumed theory of recovery is that the Government has been unjustly enriched because the Government paid Agility about half of what Agility paid for the SPG-9 weapons that it delivered to the Government. An "unjust enrichment" claim generally exists when one party benefits at another's expense, and where allowing that party to retain that benefit would be inequitable. *International Air Response v. United States,* 75 Fed. Cl. 604, 612 (2007). An unjust enrichment claim is an equitable implied-in-law contract claim. *Id.*; *Cross Country Industries, Inc. v. United States,* 231 Ct. Cl. 899, 901 (1982). "[A]n agreement implied in law is a "fiction of law" where 'a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.'" *Hercules Inc. et. al. v. United States*, 516 U.S. 417, 424 (1996) (quoting *Baltimore Ohio Railroad Co. v. United States,* 261 U.S. 592, 597 (1923). Because "the Tucker Act confers upon the [Court of Federal Claims] jurisdiction to hear and determine, inter alia, claims against the United States founded upon any 'express or implied' contract with the United

- 18 -

States . . . [w]e have repeatedly held that this jurisdiction extends to contracts either express or implied in fact, and not to claims on contracts implied in law." *Id.* at 423 (citations omitted).

It is well-settled that the Tucker Act contains no waiver of sovereign immunity for claims that are implied-in-law, including unjust enrichment claims. *See Trauma Services Group v. United States,* 104 F.3d 1321, 1324–25 (Fed. Cir. 1997) (finding claim barred by sovereign immunity where medical contractor sought payment for x-ray services which the Government accepted but was not contractually obligated to pay for). Because this Court lacks jurisdiction to entertain implied-in-law contract claims, it cannot entertain plaintiff's unjust enrichment claim. Thus, to the extent that Agility bases its motion for summary judgment upon a theory of unjust enrichment, Agility's motion must be denied.

**VII.   Agility's Reliance Upon *Granite Construction* and *Blount Brothers* Is Inapposite**

In its motion for summary judgment, Agility also contends that "the government is bound to its bargain when it obtains the benefit thereof after acceding to different specifications." Pl. Mot., p. 2. By reference to "different specifications," Agility appears to argue that it is entitled to an equitable adjustment because the Government significantly changed the specifications for the SPG-9 weapons or that the specifications were defective. In support of this claim, Agility cites *Granite Construction Co.*, ENGBCA No. 4172, 89-2 BCA ¶ 21683, 1989, 1989 WL 29822 (Eng. B.C.A.) and *Blount Brothers Corp. v. United States*, 872 F.2d 1003, 1008 (Fed. Cir. 1989). However, these cases are distinguishable from Agility's case.

In *Granite*, Granite Construction company was awarded a contract from the Washington Metropolitan Transit Authority (WMATA) for the construction of a portion of the metro subway

- 19 -

system in Washington, D.C. *Granite*, ¶1.[10] Because of an oil embargo, the contractor was unable

to obtain special steel specified in the contract for the job. As an alternate, Granite proposed

sketches, referred to as "X-1," as a no cost change in the design to accommodate the situation.

*Granite*, ¶16. WMATA reviewed and revised the X-1 proposal, and provided Granite with,

what the board referred to as, a "beefed up" version of Granite's proposal. In the revised

proposal, referred to as "X-2," WMATA made significant revisions to Granite's X-1 proposal in

the specifications for the design of the steel. *Granite*, ¶¶21, 25, 28, 29, 30. Granite began to

incur substantial increased costs of performance based upon WMATA's significantly changed

design. *Granite*, ¶¶41, 42, 43. Granite submitted a request for an equitable adjustment, which

the contracting officer denied. *Granite*, ¶50. Upon appeal to the board, the board found that by

significantly changing the design of the steel, WMATA had made a constructive change to the

contract. In so doing, WMATA had shifted from the no cost X-1 proposal of Granite to a new

constructive change order, wherein Granite could claim time and/or increased costs. Thus, the

board determined that Granite was entitled to an equitable adjustment.

The facts of our case are quite different from those of *Granite*. Here, unlike in *Granite*, in

which the contract specified certain steel, other than requiring "73 mm SPG-9 recoilless gun(s)," 

neither the contract nor Delivery Order D006 specified the variant of the SPG-9 weapons to be

procured. Additionally, with respect to the condition of the weapons, the contract simply stated

that the "proposed equipment may be new, new surplus, used, overhauled, or refurbished," which

---

[10] "*Granite* ¶___" refers to the paragraph number in the Findings of Fact in *Granite Construction Co.*, ENGBCA No. 4172, 89-2 BCA ¶ 21683, 1989, 1989 WL 29822 (Eng. B.C.A.).

means that the contractor could select any alternative listed. Pl. Mot., Exhibit A, p. 7;

Attachment 1, p. 14 (emphasis added). In response to Delivery Order D006 in December 2007,

Agility offered to procure new surplus weapons. Pl. Mot., Exhibit A, p. 7. However, Agility

was unable to procure the new surplus weapons, and offered to procure new production weapons.

Pl. Mot. Exhibit A, p. 8.

Additionally, unlike in *Granite*, the Government made no changes to the weapons that

were required by the contract. Between 2010 and 2011, following its offer of consideration for

late delivery through Bilateral Modification P00004, Agility was still unable to deliver the new

surplus weapons it had agreed to deliver. In March 2011, the parties executed Bilateral

Modification P00007, in which Agility agreed to deliver (and did deliver) new production

weapons. Because the Government made no changes to the contract regarding the weapons to be

provided by Agility, there is no constructive change and Agility's claim should be dismissed. As

the board in *Granite* noted:

> It is axiomatic that the risk of determining the availability of
> material needed for contract performance and of unexpected
> increases in cost of material not attributable to the Government
> are borne by the party promising to provide it. [board citations
> omitted]. This is true even when the increase in cost stems from
> an abnormal rise in the price of goods or unusual trade
> conditions. *Anthony P. Miller Inc. v. United States*, 161 Ct. Cl.
> 455, *cert. denied,* 375 U.S. 879 (1969).

Similarly, Agility's reliance upon *Blount Brothers. Corp. v. United States*, 872 F.2d 1003

(Fed. Cir. 1989) is misplaced. In *Blount Brothers Corp.*, the contractor was required to provide

gravel of a certain size, gradation, and color to be used in alterations and additions to the hospital

located at Wright-Patterson Air Force Base in Ohio. *Blount Brothers* at 1004. The board

- 21 -

awarded a downward adjustment in the cost to the Government because the contractor did not provide gravel that was of both the proper coarseness and color, as required by the contract, when it found that there was such a source. *Blount Brothers* at 1005. Upon appeal, the Court reversed the board's decision, because it determined that substantial evidence did not support the board's finding that there was a source of gravel that met all of the contract's requirements (i.e., that was both of a certain coarseness and color). *Blount Brothers* at 1003. On the contrary, the Court of Appeals found that the Government's specifications were defective and impossible to meet because there was no source of gravel that met all of the contract's requirements. *Blount Brothers* at 1007-1008. The Court found that even the Government could not identify a source for the gravel to meet its own specifications. *Blount Brothers* at 1008.

Here, there are no defective specifications. Other than requiring SPG-9 weapons, as stated previously, the contract did not require Agility to procure a certain variant of the weapons. Additionally, as discussed above, with respect to the condition of the weapons, the contract simply stated that the "proposed equipment may be new, new surplus, used, overhauled, or refurbished," at the offeror's discretion. The weapons supplied by Agility satisfied these requirements.

Other than these two inapplicable cases, Agility offers no legal support for its motion for summary judgment and its motion should be denied.

## **CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court grant our motion to dismiss, or alternatively, for summary judgment, deny Agility's motion for summary

judgment, and dismiss Agility's complaint as a matter of law.

Respectfully submitted,

STUART F. DELERY
Assistant Deputy Attorney General

BRYANT G. SNEE
Acting Director

s/Martin F. Hockey
MARTIN F. HOCKEY
Assistant Director

OF COUNSEL:

NATHAN J. BANKSON
Major, U.S. Army
Litigation Division
U.S. Army Legal Services Agency
Fort Belvoir, VA 22060
Telephone:  (703) 693-1092
Fax. (703) 696-8178

s/Phyllis Jo Baunach
PHYLLIS JO BAUNACH
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
pj.baunach@usdoj.gov
Telephone:  (202) 307-5832
Facsimile:  (202) 514-8640

November 6, 2013

Attorneys for Defendant

- 23 -

# APPENDIX

## INDEX TO APPENDIX

Declaration of Terry L. McBee and Attachments . . . . . . . . . . . . . . . . . . . . .   A1

Excerpts from Taos Industries Response to Request for Proposal,
dated May 21, 2004. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A8

Excerpts from Taos Industries Request For Quote #19 Revised, Part I Technical,
dated December 4, 2007. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   A17

Bilateral Modification P00004, effective April 1, 2010. . . . . . . . . . . . . . . .   A34

Bilateral Modification P00006, effective January 7, 2011. . . . . . . . . . . . . .   A37

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AGILITY DEFENSE & GOVERNMENT )
SERVICES, INC., )
                                 )
        Plaintiff, )
                                 )
    v. )         No. 13C-380
                                 )      (Judge Thomas C. Wheeler)
UNITED STATES OF AMERICA, )
                                 )
        Defendant. )

## DECLARATION OF TERRY L. MCBEE

I, Terry L. McBee declare:

1. I am over the age of 18 and legally competent and capable of making this Declaration. I have personal knowledge of the facts contained in this Declaration.

2. I am currently a Contracting Officer with the United States Army Contracting Command, Aberdeen Proving Ground (ACC-APG) providing acquisition support as a Procurement Analyst for ACC-APG, Division D, and Branch C.

3. From December 2009 to August 2012, I served as a Procurement Contracting Officer (PCO) and Team Leader for the Foreign Military Sales Team, Research, Development and Engineering Command (RDECOM), Division D, Branch D in support of foreign military procurements for the United States Army Security Assistance Command (USASAC). In that capacity, my responsibilities were to review and assign to team members new procurement packages, monitor timelines on new and on-going procurements (including administration of contracts), sign modifications and, as Contracting Officer (KO), review award documents, make awards and sign closeouts of contracts (cradle to grave contracting).

4. In this capacity, I assumed the responsibilities as the KO for Contract W91CRB-04-

A1

D-0025, Delivery Order 0006, awarded to Taos, d/b/a, Agility Defense & Government Service, Inc. (Agility).  D0006 was awarded on a firm fixed price basis.

5.  The purpose of this declaration is to describe the weapons that the Government sought to procure and the background and contents of Bilateral Modification P00007, including the End User Certificate (EUC) needed to export the weapons from Bulgaria to Afghanistan.

6.  The statements in this declaration are based upon my background and recollection of my role in preparing Bilateral Modification P00007.

7.  Under D0006, Agility originally offered to provide 225 Hungarian military new surplus "SPG-9, 73 mm Smoothbore Recoilless Rifle to include the PGO-9 Optical 4x sight" (SPG-9) at a unit cost of $5,864.00.  When Agility could not supply these SPG-9s, it offered to provide new surplus SPG-9s from the Bulgaria Government stock, that were an acceptable variant to the Hungarian SPG-9s offered.  That offer also fell through, leading to Bilateral Modification P00007 which recorded the agreement to provide new production SPG-9s.

8.  On 8 March 2011, I drafted the Bilateral Modification P00007 with the language agreed upon by Agility and the Government.  In the modification, I included information that Agility indicated was necessary to process a valid End User Certificate (EUC).

9.  For information purposes, an EUC is a document needed by the Bulgarian Government in order to grant an export license used to transport weapons between countries.

10.  Because there was a change in the weapon supplier, USASAC had to process a new EUC from the Afghanistan Government.  As the contractor supplying and exporting the SPG-9s to Afghanistan, Agility was required to provide USASAC the information that the Bulgarian Government required for a valid EUC.  Agility sent USASAC the information that USASAC needed for the new EUC.

A2

11. In the EUC, Agility specifically identified the source of the weapons as Arsenal JSC, 100 Rozova Dolina St., 6100 Kazanlak, Bulgaria (manufacture). Agility identified the nomenclature for this subcontractor's version of the SPG-9 as, "225 SPG-9/ 73mm Arsenal Anti-Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9." (*See* Attachments 1 and 2).

12. I used the same description of the weapons and the source of the weapons that Agility provided for the EUC in Bilateral Modification P00007, in order to ensure consistency between the wording of the EUC and the wording of Bilateral Modification P00007.

13. The weapons that Agility offered to procure in March 2011 as part of Bilateral Modification P00007, "225 SPG-9/ 73mm Arsenal Anti-Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9," were nothing more than a variant of the original Hungarian SPG-9 weapons that Agility had offered to provide in the Delivery Order (DO) in December 2007.

14. The difference in terminology describing the weapons in the DO and in Bilateral Modification P00007 merely reflects the change in the source of the weapons to the new subcontractor, Arsenal, and identifies the specific name used by Arsenal for marketing its SPG-9 weapons.

15. With respect to the condition of the weapons that Agility offered, in 2007, in the DO, Agility initially had offered to procure new surplus weapons. However, in 2011, in Bilateral Modification P00007, Agility specifically offered to procure new production weapons.

16. On 10 March 2013 the parties entered into Bilateral Modification P00007. In Bilateral Modification P00007, both parties agreed to establish a firm delivery schedule for CLINs 0001 AK-47 magazines and 0004 SPG-9s. Agility also agreed that it would not use clause FAR 52.216-22 to claim that it had no obligation to make delivery of the SPG-9s more

A3

than two (2) years after the original delivery date.  The parties further agreed that any failure by Agility to meet the new agreed upon delivery schedule, not caused by the Government, would allow the Government to terminate Agility for default without further notice, and proceed to re-procure the remaining weapons at the contractor's expense.

17.  Agility delivered all the SPG-9s in accordance with the agreement of the parties that was expressed in Modification P00007.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the forgoing is true and correct.

MCBEE.TERRY.L.11   Digitally signed by MCBEE.TERRY.L.1163905015
63905015   DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USA, cn=MCBEE.TERRY.L.1163905015
Date: 2013.10.30 10:47:02 -04'00'
_____
TERRY L. MCBEE

Executed this 30th day of OCTOBER 2013

A4

-----Original Message-----
From: BELACK, COLLEEN CIV USA AMC
Sent: Tuesday, March 08, 2011 10:23 AM
To: McBee, Terry L Mr CIV USA
Cc: Bankerd, Kathy Ms CIV USA AMC; Naydl, Russ Mr CIV USA AMC; Hodge, Craig E CIV USA; BELACK, COLLEEN CIV USA AMC; DAVISON, KAREN CIV USA AMC
Subject: FW: DRAFT EUC - 225 SPG-9s - Taos-Arsenal (UNCLASSIFIED)
Classification: UNCLASSIFIED
Caveats: NONE
Terry,
Is DO 7 addressed to Taos or Agility?
The attached will be sent to CSTC-A upon receipt of the DO mod.
Colleen
Colleen Belack
Chief, Services and Products Division
(formerly Special Projects Division)
U.S. Army Security Assistance Command
(717) 770-7912, DSN 771-7912
-----Original Message-----
From: Rich Sneed [mailto:rsneed@agilitylogistics.us]
Sent: Tuesday, March 08, 2011 10:15 AM
To: BELACK, COLLEEN CIV USA AMC
Cc: McBee, Terry L Mr CIV USA; Karen Chillcott; John Summers; DAVISON, KAREN CIV USA AMC
Subject: DRAFT EUC - 225 SPG-9s - Taos-Arsenal
Colleen,
Per our conversation today (in Karen Davison's absence) attached is the draft EUC for 225 SPG-9s with optics. This draft has been verified with the supplier, Arsenal JSC, to ensure compliance. If you have any questions, please let me know.
We acknowledge, per your comments this morning, that the DRAFT cannot be submitted until you receive a copy of the signed modification.
Regards,
Rich Sneed
Director, Nation Building
Agility Defense & Government Services
[cid:image001.gif@01CBDD6E.73559240]<http://www.agilitylogistics.com/dgs.shtml>
Madison, AL, USA
Tel. +1.256.772.7743 ext 160
Fax +1.256.772.7789
rsneed@taos-inc.com<mailto:rsneed@taos-inc.com>
www.taos-inc.com<http://www.taos-inc.com/>
www.agilitylogistics.com<http://www.agilitylogistics.com/>
Note: This e-mail may contain confidential information. If you have received this e-mail without being the proper recipient, you are hereby notified that any review, copying, or distribution of it is strictly prohibited. Please inform the sender of this email immediately and destroy the original transmittal. Any views or opinions presented are solely those of the author of this e-mail and do not necessarily represent those of Taos Industries Inc., unless otherwise specifically stated.
Classification: UNCLASSIFIED
Caveats: NONE
Classification: UNCLASSIFIED
Caveats: NONE



TO WHOM IT MAY CONCERN

## END USER CERTIFICATE

This is to certify that the following items were ordered from Agility Defense Government Services, Inc. under the U.S. Army Research Development Command Acquisition Center Contract W91CRB-04-D-0025, Delivery Order 6, dated 7 Dec 07 under Foreign Military Sales Case B6-B-FAJ issued by the U.S. Army Security Assistance Command (USASAC) and shall be used in the interests of the Ministry of Defense of the Islamic Republic of Afghanistan. The items will be supplied by Arsenal JSC, 100 Rozova Dolina St., 6100 Kazanlak, Bulgaria. The Ministry of Defense for Afghanistan has agreed the items are for the exclusive use of the Afghanistan National Army and will NOT be diverted or exported to any third party without consent of the Government of Bulgaria.

| Description | Quantity |
|---|---|
| SPG-9/ 73mm Arsenal Anti-Tank Grenade Launcher ATGL-H with Optical Sight PGOK-9. | 225 |

As a United States Foreign Military Sale, no import license is required.

The signature of the authorized senior Ministry of Defense official shown below serves to prove the authenticity of the End Use Certificate.

End Use Certificate is issued in the City of Kabul, Islamic Republic of Afghanistan on the _____ day of _____.

On behalf of the Ministry of Defense
Islamic Republic of Afghanistan

BAZ MOHAMMED JAWHARI
Assistance Minister for
Acquisition, Technology, and Logistics
Afghanistan Ministry of Defense

A6

**Monks, Katherine M Ms RDECOM**

| | |
|---|---|
| From: | Steve Hogan [shogan@taos-inc.com] |
| Sent: | Friday, May 21, 2004 7:00 PM |
| To: | Monks, Katherine M Ms RDECOM |
| Subject: | Taos Proposal for W91CRB-04-R-0026 |



Main
oposal_04-R-0026.p

Dear Mrs. Monks,
Attached is our proposal for the subject RFP.  Should you have
questions, please do not hesitate to contact me.
Please confirm receipt of this proposal.  Have a great weekend!
Regards,

Steven P. Hogan
Taos Industries, Inc.
Ph: 256-772-7743 x117
Mbl: 256-468-0723
Fax: 256-772-7789

-----Original Message-----
From: Monks, Katherine M Ms RDECOM [mailto:katherine.monks@us.army.mil]
Sent: Thursday, May 06, 2004 12:04 PM
To: Monks, Katherine M Ms RDECOM
Subject: W91CRB-04-R-0026 Amendment 1
Attached is amendment 1 to the above solicitation.  It provides
questions
and answers that have arisen.
Hope it clears some things up.
Have a great day!
Katie
Katherine Monks
U.S. Army Robert Morris Acquisition Center
410-278-0773 (Phone)
410-306-3737 (Fax)
katherine.monks@us.army.mil
 <<Amendment 1 W91CRB-04-R-0026.doc>>

*Small, veteran owned*

1

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004

Copy: Electronic

# SOVIET STYLE WEAPONS FOR THE GOVERNMENT OF AFGHANISTAN

Submitted By



## *Taos* ▲▲ *INDUSTRIES*

### *Specialized Procurement Services*

166 Jetplex Lane   Madison, AL 35758

In Response To

**US Army Robert Morris Acquisition Center
FMS
Request for Proposal**

## W91CRB-04-R-0026

21 May 2004

### USE AND DISCLOSURE OF DATA

This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed – in whole or in part – for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offeror as a result of – or in connection with – the submission of this data, the Government shall have the right to duplicate, use or disclose the data to the extent provided in the resulting contract. This restriction does not limit the Government's right to use information contained in this data if it is obtained from another source without restriction. The data subject to this restriction are contained in all sheets. Any request for exceptions to this disclosure policy should be directed to Mr. Steven P. Hogan at Taos Industries, telephone 256-772-7743 ext. 117.

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004



21 May 2004

Mrs. Katherine Monks
US Army Robert Morris Acquisition Center
AMSRD-ACC-U (Monks)
4118 Susquehanna Ave.
Aberdeen Proving Ground, MD 21005

Subject:    W91CRB-04-R-0026

Dear Mrs. Monks:

Attached is the proposal of Taos Industries Inc. in response to subject request for proposal. Our proposal information is included in the following sections, as detailed herein:

      Cover Letter
      TABLE OF CONTENTS
      GENERAL INFORMATION
      SF 33
      TAOS PRICING AND DELIVERY SCHEDULE
      PART I - TECHNICAL
      PART II – PAST PERFORMANCE
      Part III – ADMINISTRATIVE MATTERS

Taos acknowledges the receipt of RFQ to the basic RFP W91CRB-04-R-0026 dated 23 April 2004 and through Amendments 0001 dated 6 May 2004.

General and Administrative Information concerning Taos Industries is provided on the pages which follow. Questions concerning this proposal should be directed to myself or any of the listed points of contact on the page.

Sincerely,

Steven P. Hogan
CFO
Taos Industries, Inc.

166 Jetplex Lane  Madison, Alabama  35758  www.taos-inc.com  800-399-TAOS  256-772-7743  Fax 256-772-7789

USE OR DISCLOSURE OF THIS PROPOSAL INFORMATION IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL."

A9

| SOLICITATION, OFFER AND AWARD | | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | RATING | PAGE | OF | PAGES |
|---|---|---|---|---|---|---|
| | | | | 1 | | 80 |

| 2. CONTRACT NO. | 3. SOLICITATION NO. W91CRB-04-R-0028 | 4. TYPE OF SOLICITATION [ ] SEALED BID (IFB) [X] NEGOTIATED (RFP) | 5. DATE ISSUED 23 Apr 2004 | 6. REQUISITION/PURCHASE NO. BAF04060FY0006 |
|---|---|---|---|---|

| 7. ISSUED BY                                         CODE   W56HC6 | 8. ADDRESS OFFER TO   (If other than Item 7) | CODE |
|---|---|---|
| US ARMY ROBERT MORRIS ACQ CTR - W91CRB UNIQUE MISSIONS DIVISION ATTN: AMSRD-ACCU 4118 SUSQUEHANNA AVENUE ABERDEEN PROVING GROUND MD 21005-3013        TEL:          FAX: | See Item 7 | TEL:   FAX: |

NOTE: In sealed bid solicitations "offer" and "offeror" mean "bid" and "bidder".

**SOLICITATION**

9. Sealed offers in original and _____ copies for furnishing the supplies or services in the Schedule will be received at the place specified in Item 8, or if handcarried, in the depository located in _____ until 04:00 PM local time 23 May 2004
(Hour)    (Date)

CAUTION - LATE Submissions, Modifications, and Withdrawals: See Section I, Provision No. 52.214-7 or 52.215-1. All offers are subject to all terms and conditions contained in this solicitation.

| 10. FOR INFORMATION CALL: | A. NAME | | B. TELEPHONE (Include area code) (NO COLLECT CALLS) | | C. E-MAIL ADDRESS |
|---|---|---|---|---|---|

**11. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/CONTRACT FORM | 1 | X | I | CONTRACT CLAUSES | 14 - 17 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 2 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS** | |
| X | C | DESCRIPTION/ SPECS./ WORK STATEMENT | 3 - 9 | | J | LIST OF ATTACHMENTS | |
| X | D | PACKAGING AND MARKING | 10 | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 11 | | | REPRESENTATIONS, CERTIFICATIONS AND | |
| X | F | DELIVERIES OR PERFORMANCE | 12 | X | K | OTHER STATEMENTS OF OFFERORS | 18 - 27 |
| X | G | CONTRACT ADMINISTRATION DATA | 13 | X | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | 28 - 29 |
| X | H | SPECIAL CONTRACT REQUIREMENTS | | X | M | EVALUATION FACTORS FOR AWARD | 30 |

**OFFER  (Must be fully completed by offeror)**

NOTE: Item 12 does not apply if the solicitation includes the provisions at 52.214-16, Minimum Bid Acceptance Period.

12. In compliance with the above, the undersigned agrees, if this offer is accepted within _____ calendar days (60 calendar days unless a different period is inserted by the offeror) from the date for receipt of offers specified above, to furnish any or all items upon which prices are offered at the price set opposite each item, delivered at the designated point(s), within the time specified in the schedule.

13. DISCOUNT FOR PROMPT PAYMENT (See Section I, Clause No. 52.232-8)

| 14. ACKNOWLEDGMENT OF AMENDMENTS (The offeror acknowledges receipt of amendments to the SOLICITATION for offerors and related documents numbered and dated): | AMENDMENT NO. 0001 | DATE 05 May 2004 | AMENDMENT NO. | DATE |
|---|---|---|---|---|

| 15A. NAME AND ADDRESS OF OFFEROR | CODE   0WGX9 | FACILITY | 16. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or print) |
|---|---|---|---|
| Taos Industries, Inc. 166 Jetplex Lane Madison, AL 35758 USA | | | Steven P. Hogan, CFO |

| 15B. TELEPHONE NO.   (Include area code) 1-256-772-7743 | 15C. CHECK IF REMITTANCE ADDRESS IS DIFFERENT FROM ABOVE - ENTER SUCH ADDRESS IN SCHEDULE | 17. SIGNATURE | 18. OFFER DATE 21 May 2004 |
|---|---|---|---|

**AWARD  (To be completed by Government)**

| 19. ACCEPTED AS TO ITEMS NUMBERED | 20. AMOUNT | 21. ACCOUNTING AND APPROPRIATION |
|---|---|---|

| 22. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: [ ] 10 U.S.C. 2304(c)(   ) [ ] 41 U.S.C. 253(c)(   ) | 23. SUBMIT INVOICES TO ADDRESS SHOWN IN (4 copies unless otherwise specified) | ITEM |
|---|---|---|

| 24. ADMINISTERED BY (If other than Item 7) | CODE | 25. PAYMENT WILL BE MADE BY | CODE |
|---|---|---|---|

| 26. NAME OF CONTRACTING OFFICER (Type or print) | 27. UNITED STATES OF AMERICA | 28. AWARD DATE |
|---|---|---|
| TITLE:   EMAIL: | (Signature of Contracting Officer) | |

IMPORTANT - Award will be made on this Form, or on Standard Form 26, or by other authorized official written notice.

| Previous Edition is Usable | 33-134 | STANDARD FORM 33 (REV. 9-97) Prescribed by GSA FAR (48 CFR) 53.214(c) |
|---|---|---|

A10

Section B - Supplies or Services and Prices

| ITEM NO | SUPPLIES/SERVICES | QUANTITY | UNIT | UNIT PRICE | AMOUNT |
|---------|-------------------|----------|------|------------|--------|
| 0001 | | 1 | Lot | 18,218,037.75 | 18,218,037.75 |

Soviet Style Weapons
FFP
Offeror shall provide estimated pricing and estimated delivery for Soviet Style
Weapons in accordance with the attached spreadsheet. Quantities are estimates.
Contract period shall be date of award through one year.

Proposed equipment may be new, new surplus, used, overhauled, or refurbished,
but must be in serviceable, operable condition.

Offers may be mailed, faxed or e-mailed (fax or e-mail preferred) to the following:
E-mail: katherine.monks@us.army.mil
Fax: 410-306-3737
US Army Robert Morris Acquisition Center
AMSRD-ACC-U (Monks)
4118 Susquehanna Ave
Aberdeen Proving Ground, MD 21005

THIS IS AN FMS REQUIREMENT AF-B-UAJ
MILSTRIP: BAF04N4071Y005
PURCHASE REQUEST NUMBER: BAF04N4071Y005

NET AMT                     18,218,037.75

FOB: Destination

B.1 TYPE OF CONTRACT
A.  Basic contracts will issued on an indefinite delivery/indefinite quantity basis, in accordance with FAR 16.504.

B.  Individual delivery orders issued under the basic contract will be on a firm, fixed-price basis.

B.2 CONTRACT MINIMUM AND MAXIMUM LIMITATIONS

A.  The Government is obligated to place, with the contractor, a total of $30,000 in supplies under this contract
over the contract period of performance. This will be considered the contract minimum.

B.  The Government may place additional task orders with the contractor up to the total estimated amount of the
contract. This will be considered the contract maximum.

The Government reserves the right to award only the minimum to the contractor; there is no guarantee that the
minimum will be exceeded.

A11

Section C - Descriptions and Specifications

SPREADSHEET OF ITEMS

| CLIN | Description | Est. Qty | Unit Price (FOB New Cumberland, PA) | Total Price | Delivery FOB New Cumberland, PA (days) | Unit Price (FOB Afghanistan) | Total Price | Delivery FOB Afghanistan (days) | Condition (new, new surplus, used, OH-ed, refurbished) |
|---|---|---|---|---|---|---|---|---|---|
| 1 | D-30A Artillery 2A18M 122mm Towed Artillery (M1963) | 70 | | | | 49,919.63 | 3,494,373.75 | 120 | Surplus and refurbished |
| 2 | Machine Gun, PKSM | 600 | | | | 2,586.40 | 1,551,840.00 | 100 | New |
| 3 | SPG-9, Recoilless Gun, 73 mm | 170 | | | | 10,476.35 | 1,780,980.00 | 120 | New |
| 4 | Mortar, 82mm | 300 | | | | 7,793.12 | 2,337,936.00 | 100 | New and new surplus |
| 5 | Grenade Launcher, Mid on AK-47, GP-30 pr GP-25 | 1,600 | | | | 471.96 | 755,136.00 | 100 | New |
| 6 | Rifle, Assault, 7.62mm AK-47 | 16,500 | | | | 100.80 | 1,663,140.00 | 90 | Used /100% operational |
| 7 | Pistol, 9mm Makarov | 4,700 | | | | 192.92 | 906,724.00 | 90 | New |
| 8 | Grenade Launcher, RPG-7 | 800 | | | | 1,509.44 | 1,207,546.00 | 100 | New |
| 9 | Rifle, 7.62 Dragunov SVD | 900 | | | | 2,327.29 | 2,094,560.00 | 120 | New |
| 10 | 7.62 RPK Light Machine Gun | 2,000 | | | | 486.54 | 973,080.00 | 90 | Used /100% operational |
| 11 | 40mm GP-25 Grenade Launcher | 2,000 | | | | 471.96 | 943,920.00 | 100 | New |
| 12 | AT-5 Spandrel Anti-Tank Guided Missle Launchers, | 20 | | | | 25,4440.00 | 508,800.00 | 120 | New |
| | TOTAL | | | | | | 18,218,037.75 | | |

STATEMENT OF OBJECTIVES

**Background Information:** The U.S. Army Security Assistance Command (USASAC) has a requirement to obtain Soviet Style Weapons for the Government of Afghanistan to include, but not limited to, those listed in the attached spreadsheet. USASAC anticipates recurring requirements but cannot predetermine the precise quantities of supplies the Government of Afghanistan will require for the contract period.

**Objective:** The objective of this contract is to provide, on a delivery order basis, using a fixed-price, indefinite-delivery, indefinite-quantity (IDIQ) type contract, the Government of Afghanistan's requirement for Soviet Style

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004

# PART I

# TECHNICAL

USE OR DISCLOSURE OF THIS PROPOSAL INFORMATION IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE    8
OF THIS PROPOSAL."

A13

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004

Given the nature of these specific CLIN's, discussed below, Taos concludes that a condition other than new imposes a risk to the user based on the nature of the munitions fired from the weapon and service life of the barrels. Therefore Taos does not provide pricing for used, overhauled, or refurbished equipment for these CLIN's.

### New versus "other" condition rational

CLIN 0003   SPG-9 Recoilless Gun

The 73mm SPG-9 fires a 73-mm fin-stabilized, rocket-assisted HEAT projectile. The pressure generated by repeated firing of this weapon may create stress cracks to the breach or barrel that would endanger the operator. Without accurate records of usage, the risks of such stress cracks in 'used' condition can not be determined. New equipment is therefore proposed.

CLIN 0004   Mortar, 82mm

The 82mm Mortar is produced by Arsenal which recommends new production versus used or refurbished equipment. Taos has not found used or refurbished stocks in our research; therefore, new production stocks are proposed.

CLIN 0005 and 0011      Grenade Launcher GP-25

The GP-25 fires a 40mm Round High-Explosive Fragmentation RHE-F or High-Explosive Fragmentation Jump RHE-FJ generating pressures of 800 kgf/sm. The barrel stress from pressure generated by firing this weapon may create cracks to the breach or barrel that would be unnoticeable to the trained observer. New equipment is therefore proposed.

CLIN 0008   Grenade Launcher RPG-7

Taos delivered a quantity of RPG-7 launchers to the US SOCOM in November 2002, part of a larger weapon and ammunitions purchase. The RPG-7 has a service life of approximately 100 firings, after which, the launcher end nozzle is replaced by removing the welds, etc. Refurbished or used weapons are not recommended; new equipment is therefore proposed.

### 1.6.2  Other than New or New Surplus Materiel

From the Czech Republic, Taos intends to purchase from long-term storage CLIN 0001, the D-30A 122mm howitzer. The Czech Republic has several systems that will be factory inspected and delivered in unused or slightly used condition.

USE OR DISCLOSURE OF THIS PROPOSAL INFORMATION IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE   15
OF THIS PROPOSAL."

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004

Taos intends to purchase refurbished and used PKS machine guns, AK-47's, Makarov 9mm pistols, and 7.62 RPK Light Machine Guns, CLIN's 0002, 0006, 0007, and 0010, respectively, from Croatian stock belonging to Henro, Ltd. This supplier is a UK partner with Taos from whom Taos has purchased several million dollars of weapons in the past to include AK-47's, PKM's, Makarov pistols, RPK's, and AK-74's from this same Croatian stock and warehouse delivered to USSOCOM and other US DoD customers.

### 1.7 Delivery Schedule

To meet the urgent need of this material, Taos plans to deliver items from war reserve stocks where available. For all CLIN's, which are subject to international trafficking in arms regulations, a verifiable and validated End User Certificate will be required. Delivery schedules are subject to foreign export license approvals, and related factors which may affect delivery. Because all the weapons required on this RFP are not of US Origin; Taos will not be delivering any weapons to the CONUS address in New Cumberland, PA; rather, Taos will purchase the weapons from Europe and Eastern Europe and deliver FOB to the Afghan National Depot in Kabul Afghanistan. Taos has recent experience in making deliveries to this location for contracts issued by JLC Contracting Office Forward, in Kabul.

The Taos proposed delivery schedule is detailed in Section C, *description and Specifications* of the RFP. Taos intends to deliver at least 100% of the quantities ordered within 90-120 Days after Receipt of Contract Award and Verified End User Certificate in the Country of Origin.

Other competing US Department of Defense agencies, to include the Coalition Provisional Authority in Iraq, have issued multiple requirements for the similar model type of weapons. Existing qualified stocks may not be sufficient to satisfy all these requirements. If new production is required because other DoD requirements receive priority on stock items, Taos will deliver new production weapons. Delivery of new production stocks will take approximately 120 days from approval of Export License.

### 1.8   Shipping

Taos recently shipped over 36 metric tons of blank ammunition, comprised of 2,500,000 rounds, to Kabul, Afghanistan utilizing the services of a Silkway Airlines, IL-76TD (40 ton capacity), from Bulgaria to Kabul Airport and AES Cargo in Kabul for the shipping and handling of the cargo in the end Country. Additionally, Taos is contracting with ASB-Air and AES Cargo, both working in partnership in Afghanistan, for delivery of materiel into Iraq. Taos intends to leverage our purchasing power for transportation for the Iraqi shipments in support of this contract.

As such, Taos intends to use the same or similar supply channels and shipping methods, where possible, for completion of the orders issued under the subject RFP,

USE OR DISCLOSURE OF THIS PROPOSAL INFORMATION IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE   16
OF THIS PROPOSAL."

Taos Industries Inc.
U.S. Army Robert Morris Acquisition Center
Request for Quotation W91CRB-04-R-0026
Dated 23 April 2004

AES Cargo was one of the first global logistics firms in Afghanistan and offers transportation services from Dubai utilizing weekly flights from Dubai to Kabul with a 2-day transit time. When the cargo arrives in Kabul, Taos intends to utilize Taos staff and AES Cargo for direct deliveries to Destination.

## 1.9   Pricing

The Taos pricing for each CLIN is included in the *Section C – Descriptions and Specifications*. Taos pricing is quoted FOB Destination to the Afghan National Depot, Kabul, Afghanistan. All costs associated with shipping to Destination are included in each CLIN unit price.

In preparing this proposal we have obtained written quotes from multiple sources for all items and have validated these quotes with our SOCOM foreign weapons database. All prices are firm-fixed prices which include delivery and warranty.

Minimum orders may be required. The RFP requires that the offeror include the transportation and handling costs in the CLIN price. However, since a minimum quantity purchases is not stated in the RFQ, the Taos pricing schedule may require that the contractor be allowed to consolidate individual orders for shipping quantities. This represents the most economical shipping quantity and cost saving to Afghanistan.

## 1.10   Certificate of Conformance

Taos is familiar with and provides a Certificate of Conformance (CofC) with deliveries made to other US Government Security Assistance programs for which Taos is a prime contractor or subcontractor, in particular under the Army's SNAP and PROS II programs. A CofC will be provided with each delivery made under this contract, according to the terms of the RFP, FAR 52.246-15.

## 1.11   Warranties

Taos warrants and implies that items delivered hereunder are merchantable and fit for use for the particular purposes described in this contract.

## 1.12   Personnel Qualifications and Key Staff

Procuring nonstandard military armaments, munitions, hazardous materials and sensitive technical documentation from foreign countries, particularly from third world countries, is a tremendously demanding task. Every order brings unique challenges in terms of meeting foreign government legal and business requirements, overcoming

USE OR DISCLOSURE OF THIS PROPOSAL INFORMATION IS SUBJECT TO THE RESTRICTIONS ON THE TITLE PAGE OF THIS PROPOSAL."  17

Copy: <u>Electronic</u>

# REQUEST FOR QUOTE #19 Revised

## PART I: TECHNICAL

4 December 2007

Submitted By



**Taos ▲▲ INDUSTRIES**

*Specialized Procurement Services*

480 Production Ave
Madison, AL 35758

In Response to

**U.S. Army Research, Development, and Engineering
Command Acquisition Center**

### Contract W91CRB-04-D-0025

**RFQ Dated 6 November 2007**

USE AND DISCLOSURE OF DATA

The data enclosed herein is proprietary to Taos Industries Inc. It shall not be disclosed in part or in whole to any third party other than those employees of the U.S. Department of Defense, RDECOM and other U.S. Government organizations specifically involved in this acquisition. This restriction will no longer apply if a contract is awarded to Taos Industries as a result of this proposal. Any request for exceptions to this disclosure policy should be directed to Mr. Mike McWilliams at Taos Industries, telephone 256-772-7743 ext. 133.



**Taos INDUSTRIES**
Specialized Procurement Services

460 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

4 December 2007

Debbie Morrow
U.S. Army Research, Development, and Engineering
     Command Acquisition Center
Aberdeen Proving Ground, MD 21010-5424

Subject: Request for Pricing # 19

Dear Ms. Morrow,

For this RFP, Taos is able to provide improved service, capability, and pricing to the customer than we have on previous delivery orders. In September 2006, Taos Industries, Inc. was purchased by PWC Logistics, a world leading logistics company which has recently rebranded itself as Agility Logistics. Agility is a $4 Billion company with over 20,000 personnel working out of over 450 offices in more than a 100 countries. Taos now has at its fingertips the full capabilities of this worldwide logistics empire to best fulfill the requirements of this contract and can perform at a level unmatched by our previous capabilities as a small family owned business. In addition to our logistics capability, the Agility Team also maintains a fully staffed office in Kabul that will work diligently to facilitate any movements on the ground and maintain constant communication with the customer.

Taos recognizes the Government's focus on surety of delivery as evidenced by the new proposal and evaluation requirements set forth on this and recent mini-competes. In order to remain competitive on previous bids, we offered a low cost approach with an increased risk in regard to surety of delivery. This bid offers competitive pricing for the material sought, but with reliance on new production for both items as stocks of this quality and quanity are no longer in existence.

As always, Taos will stand by its products and maintain constant interface with the customer and contracting team as it has done in the past.

We hope to have served you with our quote and look forward to hearing from you. Please direct any questions to the undersigned at (256) 772-7743 ext. 133 or via email at mmcwilliams@taos-inc.com.

Sincerely,

Mike McWilliams
Director

2

A18



480 Production Ave, Madison, AL 36758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

## SUBPART 1: TECHNICAL SPECIFICATIONS

3

A19



**Taos INDUSTRIES**
Specialized Procurement Services

480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

## Item 4: SPG-9, 73mm Smoothbore Recoilless Rifle to include the PGO-9 Optical 4x sight

The SPG-9 Kopye (Spear) is a Russian tripod-mounted man-portable, 73 mm recoilless gun developed by the Soviet Union. It fires fin-stabilized, rocket-assisted HE and HEAT projectiles similar to those fired by the 73 mm 2A28 Grom low pressure gun of the BMP-1 vehicle. It was accepted into service in 1962, replacing the B-10 recoilless rifle.



The projectile is launched from the gun by a small charge, which gives it an initial muzzle velocity of around 250 m/s to 400 m/s. The charge also imparts spin to the projectile by a series of offset holes in the launch charge. Once the projectile has traveled approximately 20 meters from the launcher a rocket motor in the projectile ignites. For the PG-9 projectile, this takes it to a velocity of 700 m/s before the motor burns out.

The weapon is light, and is normally transported by vehicle, and carried into position by its two crew members. It can be deployed in about one minute. The weapon is in service with a large number of armed forces and a variety of ammunition is produced.

| | |
|---|---|
| Type | Recoilless rifle |
| Place of origin | Soviet Union |
| **Service history** | |
| In service | 1962– |
| **Specifications** | |
| Weight | 47.5 kg (59.5 kg with the tripod) |
| Length | 2110 mm |
| Width | 990 mm (allowing for full weapon traverse) |
| Height | 800 mm |
| Crew | 2 |
| | |
| Caliber | 73 mm smoothbore |
| Breech | Interrupted screw |

*NO CHG*
*New Surplus*
*Hungary*

7

A20



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789  www.taos-inc.com

| Carriage | Tripod |
|---|---|
| Elevation | + 7°/-3° |
| Traverse | 30° total |
| Rate of fire | 6 rounds per minute |
| Muzzle velocity | 250 to 400 m/s |
| Effective range | 800 m |
| Maximum range | 1,200 m to 6,500 m |
| Feed system | Manually breech loaded |
| Sights | PGO-9 optical 4x sight |

8

A21



**Taos INDUSTRIES**
Specialized Procurement Services

480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

Item 5: Rifle, Sniper, 7.62mm x 54 R SVD  to include PSO-1 Scope with
Illuminated Reticule to include, but not limited to, the following accessories:

    Container Cover
    Bristle Brush
    Screwdriver
    Scourer
    Drift
    Container Body
    Oiler
    Cheek Plate
    Cleaning Rod
    Cleaning Rod Extender
    Cleaning Rod extender - front
    Seven (7) magazines per weapon
    Sling for each weapon

*(handwritten: ADDED)*

The Romanian PSL Sniper Rifle is an acceptable substitute for the SVD. The Chinese
version is NOT acceptable.



RomArm PL 7.62 mm sniper rifle

**Description**

The RomArm PL sniper rifle was originally a military adaptation of a commercial design. The PSL is of bull-dog design and is now a dedicated military sniper rifle.

The overall design is conventional, featuring wooden furniture, a fully adjustable butt-stock with an adjustable cheek rest and bipod, a semi-pistol grip and a folding, adjustable night bipod. Double arm fed from a detachable 10-round box magazine of the FPK with...

RomArm PL 7.62 x 54 mm R sniper rifle
(T.Gander)
Jane's Infantry Weapons 2005-2006

jiw.janes.com

---

106    SNIPER AND SPECIAL PURPOSE RIFLES/Romania—Russian Federation

loading sniper rifle type. The barrel features a muzzle brake, knob into sights are provided, although various forms of optical sight can be fitted. The rifle has been observed mounting a 4 x 6° optical sight.

**Specifications**
Cartridge: 7.62 x 54 mm R
Operation: bolt-action magazine-fed
Locking: rotary bolt
Feed: detachable box mag
Magazine: 10 rds

**Weight**
without mag: 4.5 kg
with empty mag: 510 g
**Length**
overall: 1.24 m
barrel: 625 mm
Rifling: 4 grooves; rh, 1 turn in 300 mm
**Sights**
fore: pillar
rear: adjustable V-notch
optical: x4
Sight radius: 590 mm

Muzzle velocity: 800 m/s
Max effective range: 800-1,000 m

**Status**
Available, in service with the Romanian armed forces. Offered for export sale.

**Contractor**
RomArm SA

*(handwritten: updated)*

*(handwritten: New Surplus Romania)*

9



**Taos INDUSTRIES**
Specialized Procurement Services

480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789  www.taos-inc.com

**Item 6: Grenade Launcher mtd on AK47, GP25/30  (Items must be received in country already mounted to the AK-47).**



| Calibre, mm | 40 |
|---|---|
| Ammunition | RHE-F,7 RHE-F3/RP |
| Muzzle velocity, m/s | 76 |
| Practical rate of fire, round/min | 4 - 5 |
| Maximum range of fire , m | up to 400 |
| Length, mm | 323 |
| Weight, kg | 1.5 |
| Resource with 1 assault rifle, rounds | 400 |
| Recoil mechanism | Drush |
| Butt plate with sling | Set of group GPTA for 20 launchers |
| Bag for launcher | Bag for grenades |
| 20 Grenade launchers in 1 wooden case | |
| Case dimensions, mm | 1200 x 517 x 375 |
| Weight of the wooden case, kg | 76 |
| Volume of the wooden case, m³ | 0.232 |

The 40 mm Under Barrel Grenade Launcher UBGL is designed to be attached to 5.45, 5.56 and 7.62 mm Assault Rifles and is intended for attacking multiple live targets in open or in trenches at ranges up to 400m. See table for list of additional accessories provided.

| AK-47 Specifications | |
|---|---|
| Weight: | 3,21 kg |
| Length: | 847/648 mm |
| Barrel length: | 317 mm |
| Cartridge: | 7.62 × 39 mm |
| Caliber: | 7,62 mm |
| Action: | Gas-operated, rotating bolt |
| Rate of fire: | 600 RPM |
| Feed system: | 30 round |

The 7.62mm AK-47 is a highly effective automatic weapon designed for the antipersonnel role at a range of 800 m.  The system operates on propellant gasses diverted through a vent in the barrel.

Single and group targets can by destroyed by burst firing at a range of 500m.  Skilled marksmen can hit targets in the single shot mode up to 600m.  The bullet has a lethal range of 1,350m.   The weapon fires cartridges cal. 7.62x39m.

New
Serbia

10

A23



480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

## SUBPART 2: EXPORT AND TRANSPORTATION PLAN

15

A24



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789  www.taos-inc.com

Upon receipt of the delivery order, Taos will subcontract with our suppliers while simultaneously applying for the EUC.  As soon as possible, Taos will travel to the respective country of origin to discuss packing and marking requirements, quality controls, and inspect the weapons with all accessories to include inspection of the production line if applicable.   Upon receipt of the EUC, Taos will work with both the suppliers and our own office in Sofia Bulgaria to apply for and obtain the required export licenses.

The regulations for the export of surplus military weapons and new production military weapons from Eastern European Countries fall under the Law on Foreign Trade of Armament, Military Equipment and Dual Use Goods as revised and implemented in March 2005. Our foreign supplies are registered in the Ministry of Economic Development for Foreign Trade which allows them to export or import weapons, armament and military equipment. We will work with Zastava to submit the following documents to the Ministry of Economic Development for application of an export license:

- Original End User Certificate
- Translation of the EUC
- Original Contract with the Customer
- Translation of the Contract with the Customer
- Original Contract with Taos
- Translation of the Contract with Taos
- Completed export license application

Upon receipt of the application, the Ministry of Economic Development will request export license issuance from the Ministry of Internal Affairs, the Ministry of Foreign Affairs, and the Ministry of Defense.   After all the ministries approve of the export license, the Ministry of Economic Development will issue the license. This procedure can last up to 30 days. We will copy the U.S. Defense Attaché on this correspondence to keep him in the loop and to facilitate validation if requested by the export committee.

In the event that Taos has an export issue, we will work directly with the senior military attaché at the U.S. Embassy to resolve it. As a matter of routine we will keep the military attaché advised of our activities throughout the life of the program as discussed above. Our Sofia, Bulgaria office meets regularly with U.S. Embassy staff and export officials and stands ready to resolve issues should they arise.

In order to transport the goods from either the MOD warehouse or the production facility to the airport, our suppliers must apply for a land-transport license through their Ministry of Internal Affairs.   The Ministry of Internal Affairs will request approval from both the Ministry of Foreign Affairs and the Ministry of Defense. After receiving these approvals, the Ministry of Internal Affairs will issue the transport license. This procedure can last up to 15 days. Taos will then apply for the over flight approvals and cut the airway bill (AWB) for each flight.

For the items required under this RFP, Taos used the cost and loading capacity of the Ilyushin (IL-76) to estimate our shipping cost. Although there are larger capacity aircraft available, the IL-76 is the most cost effective due to it's availably.  Larger capacity aircraft such as the Antovov (AN) -124 CONDOR or the AN-225 MRIYA are not practical unless fully loaded and readily available.  In order to best meet the accelerated delivery timeline required by this solicitation, aircraft availability

16

A25



480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

is essential. However, Taos may use larger aircraft or even smaller aircraft than the IL-76, such as the AN-12, based upon the mission, plane availability, and timeline. In our analysis, we found using the cost and loading capacity of the IL-76 works best for both planning and budgetary reasons in determining our transportation cost.

Taos used the current cost of an IL-76 to estimate our shipping cost. The IL-76 is able to carry a maximum of 50,000 kg, but for practical purposes the maximum is only 45,000 kg. In our analysis, we assume that every aircraft will fly to full capacity with a load of 45,000 kg. Any loss of revenue incurred to flights flying at less than full capacity will be borne by Taos.

In our analysis of transportation costs, Taos used the ship weight and dimensions provided to us by the suppliers to calculate the number of aircraft required. Based upon the ship weight and dimensions, we calculated how many weapons will transport via each aircraft based upon their respective availability schedule. The total number of aircraft was then calculated by dividing the total weight of the goods by the carrying capacity of the IL-76. Taos then cross referenced our calculated weight against the capacity per airplane of previous shipments to double check our estimates. This process allows us to best estimate our shipping cost as this accounts for a considerable amount of the overall unit price.

After Taos has completed the cargo manifest based upon our calculations, the manifests are verified by the loadmaster of the aircraft company. Pending any changes and the completion of all required documents, Taos will coordinate with the aircraft company to submit applications for landing and over flight permit to the respective CAA, under the Ministry of Transportation, Maritime Affairs and Telecommunications. The CAA requests approval from following ministries in order to issue the permit to the airline company: Ministry of Foreign Affairs, Ministry of Defense, and the Ministry of Internal Affairs. After receiving all the approvals, the CAA issues permission to the airline company which can take up to 15 days. Taos will also coordinate with contracting officer and submit an ISAF movement request form and the PPR request so that the aircraft can unload on the military side of Kabul Airport with an ISAF call sign. Taos will subcontract with a licensed, insured, and experienced truck carrier to move the weapons from the military bases and/or storage facilities to the airports. Taos will also coordinate for the required military police escorts to secure the transport of the weapons to the airport. Depending on the scheduled time of the flight, the goods will arrive at the airport anywhere from 6-12 hours prior to the scheduled flight. Taos will coordinate for customs to inspect, verify, and approve the transport of the weapons at the airport prior to the aircraft arriving for loading. After the goods have cleared customs, Taos will load the chartered aircraft via forklift(s). After the plane is loaded, pallets secured and stowed in the aircraft, the aircraft will depart from the airport for final destination pending any technical stops and/or fuel resupply pending the size of the aircraft and the weight of the load.

Taos will maintain coordination with the contracting officer and the POC in Kabul until the aircraft is on the ground and the goods are secured at their respective depot for receipt by the customer. The aircraft will be met by the program manager of our Afghan office to facilitate wherever necessary. Taos will, as it always has, stand by our products and support wherever necessary.

17



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789  www.taos-inc.com

## EUC Information

Please submit the EUCs with the following verbiage and send all originals to the general manager of our Bulgaria office, Mr. Roger Eaves, as addressed below.  It is understood that delivery will then be calculated based on the date the EUC is received by Taos in the Bulgaria.

> Taos Industries, Inc.
> Attn: Mr. Roger Eaves
> Suite No. 2
> 34 Zlatovruh Street,
> Lozenetz,
> Sofia 1407
> Bulgaria.
> Tel: +359 (2862) 4029
> Mobile: +359 8866 20653

Please submit a separate EUC for each line item as listed in the table below:

| NOMENCLATURE | QUANTITY |
|---|---|
| AK-47 Assault Rifle, cal. 7.62mm x 39mm to include a total of seven (7) 30-round magazines per weapon. | 16,764 |
| RPK Light Machine Gun, cal. 7.62mm x 39mm to include a total of Ten (10) 40-round magazines per weapon | 746 |
| RPG-7 Grenade Launcher with Optical Sight | 227 |
| SPG-9, 73mm Smoothbore Recoilless Rifle with sight | 225 |
| PSL Sniper Rifle, 7.62mm x 54mm to include PSO-1 scope | 478 |
| AK-47 Assault Rifle, cal. 7.62mm x 39mm mounted with GP-25 Grenade Launcher | 1,592 |
| Mortar, 82mm with Base plate and Bipod | 506 |
| PKM Machine Gun, cal. 7.62mm x 54mm. | 745 |
| Heavy Machine Gun, DSHK 12.7 mm with Tripod to include spare parts and accessories | 225 |

18

A27



480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

## SUBPART 3: SUPPLIER INFORMATION

19

A28



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789  www.taos-inc.com

For this requirement, Taos will deliver required items as per the table below:

| NOMENCLATURE | QTY | SUPPLIER | COUNTRY OF ORIGIN |
|---|---|---|---|
| AK-47 Assault Rifle, | 16,764 | Yugolmport Mont | Serbia |
| RPK Light Machine Gun | 746 | Yugolmport Mont | Serbia |
| RPG-7 Grenade Launcher | 227 | Romtechnica | Romania |
| SPG-9, 73mm Smoothbore Recoilless Rifle | 225 | Evdin | Hungary |
| PSL Sniper Rifle | 478 | Romtechnica | Romania |
| AK-47 with GP-25 Grenade Launcher | 1,592 | Zastava | Serbia |
| Mortar, 82mm | 506 | Arsenal | Bulgaria |
| PKM Machine Gun, | 745 | Zastava | Serbia |
| *DSHK HMG* | 225 | Nat – Import Export | Poland |

## ZASTAVA ORUŽJE A.P. – Serbia

Mailing address:

> ZASTAVA ORUŽJE A.P.
> Trg topolivaca 4
> 34000 Kragujevac
> Serbia



Zastava Arms is a State-Owned manufacturer of high quality arms with world renowned quality and performance. Their history dates back as far as 1853, when the Kragujevac factory casted their first front loaded bronze cannons with Serbian coat of arms. Presently, they produce ad wide range of hunting, sports and self-defense weapons to include military grade weapons for the Serbian Army and police forces.

As the existing stockpiles of military surplus weapons are diminishing, especially for heavy machine guns, Zastava is one of the many E. European manufactures looking towards the opportunity to supply weapons of this quanity. However, Zastava is one of the few that not only has the resources available to accomplish such a large task, but can do it an affordable cost.

Taos has worked with Zastava on several contracts with US SOCOM and for deliveries to Iraq. Taos currently has a production in operation for PKMs and NSVs under Contract W91CRB-07-07-C-0119. This prior order will enable Zastava to react quickly and start prodcution on the items requirmed for this RFQ immediately upon award as they will not require any start-up time.

In addition to Taos Madison's management and oversight, Taos will also utilize our management team in our Taos Bulgaria office. Our office manger at our Bulgaria facility has been a proven asset to interface with the manufacture to handle any unforeseen issues and to maintain constant

20



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

## Arsenal Co. -- Bulgaria

Mailing Address:

ARSENAL Co.
100, Rozova Dolina St.,
6100, Kazanlak,
BULGARIA

ARSENAL was founded in 1878 in the town of Rousse where it served as the
first factory in support of the newly created Bulgarian Army.    It is a
distinguished producer of small arms and artillery armaments, ammunition,
primers, powders, pyrotechnic products, hunting and sport weapons and
ammunitions, cemented carbide tools, tips and inserts, universal milling
machines, CNC milling machines, drilling machines, casting, forging along with
several other items.

ARSENAL has built a Quality Management System applicable for the design
and production of armaments, ammunition and their components in accordance
with the requirements of NATO Publication - AQAP 2110, CERTIFICATE
Series SK No. 0025/2005



Taos has delivered Arsenal's high quality weapons and ammunition to our customers in Iraq,
Afghanistan, and the U.S. as shown below:

- Purchased over $13,000,000 in material cost
- Granted 26 export licenses for weapons and ammunition by the Bulgarian Export
  Committee
- Delivered by air, land, and sea to our customers using our proven on the ground
  support

Taos will also utilize our management team in our Taos Bulgaria office.  Our office manger at our
Bulgaria facility has been a proven asset to interface with the manufacture to handle any
unforeseen issues and to maintain constant communication with US Embassy in support of the
export of military goods for US Government contracts.  We will utilize all the assets available to us
to ensure a timely delivery of high quality products.

22

A30



**Taos ▲▲**
**INDUSTRIES**
*Specialized Procurement Services*

480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com



® Armament, Ammunition *AQAP-2110*
Machine Tools ISO 9001



Rel. №867 '15 IV.2005

## STATEMENT

Herewith we, Arsenal JSC, having its offices at 100, Rozova
Dolina St. 6100 Kazanlak, Bulgaria, state that we will deliver the complete
list of below items:

1. 7.62x39 mm Arsenal Assault Rifle AR- 16 764pcs.
2. 7.62x39 mm Arsenal Light Machine Gun LMG- 746pcs
3. 73 mm ARSENAL Heavy Anti- tank Grenade Launcher ATGL-H1-225pcs.
4. 7.62x39 mm ARSENAL Assault Rifle AR- 1 592pcs
5. 40 mm Arsenal Under Barrel Grenade Launcher UBGL-1- 1 592pcs
6. 7.62 x 54 mm ARSENAL Machine Gun MG-1M-74 5pcs.
7. 12.7 mm Heavy Machine Gun DShK- 18pcs

If Taos Industries Inc. is awarded for that supply

ARSENAL JSC

N. Ibushev,
/General Director/

23

A31



480 Production Ave, Madison, AL  35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

**Specialized Procurement Services**

**Evdin Ltd.**

Taos has worked with the military goods and consulting group, Evdin Ltd for more than two years.
Evdin is our link to preferred pricing in dealings with Romtechnica. Evdin's physical address is:

> Evdin Limited
> Thermopylon 1
> 6023 Larnaca Cyprus

Through Evdin, Taos has delivered millions of dollars of surplus AK-47, RPKs, and RPG from
Romtechnica on previous Iraq contracts.   Taos has delivered Romanian arms through
Romtechnica to our customers in Iraq, Afghanistan, and the U.S. as shown below:

- Purchased over $7,000,000 in material cost
- Granted 13 export licenses for weapons and ammunition by the Romanian Export
  Committee
- Delivered by air, land, and sea to our customers using our proven on the ground
  support

Romtechnica's physical address is the following:
> 5C, Timisoara Blvd
> Bucharest 6,
> Romania

24



**Taos INDUSTRIES**
*Specialized Procurement Services*

480 Production Ave, Madison, AL 35758
Phone: (256) 772-7743; (800) 399-TAOS
Fax: (256) 772-7789   www.taos-inc.com

---

# EVDIN

Evdin Limited
Thermopylon 1
6023 Larnaca Cyprus

Phone: +357 2491 8434
Fax: +357 2491 8435
Email: evdin.ltd@gmx.net

To the attention of:
TAOS INDUSTRIES INC
Procurement Office
Mr. Mike McWilliams
Production Avenue 480
35758 Madison, AL
USA
Mmcwilliams@taos-inc.com

Date:  1 December 2007          Subject: RDECOM Urgent Requirement Weapons

Dear Mr. McWilliams:

In reference to the subject solicitation, Evdin Limited, Thermopylon 1, 6023 Larnaca Cyprus will supply the below items IAW the quoted delivery schedule to Taos Industries upon award:

| Description | Qty |
|---|---|
| Grenade Launcher, RPG-7, 40mm with Optical Sight (Optics should be compatible with the OG-7V frag round) | 227 |
| Rifle, Sniper, 7.62mm X 54R to include PSO-1 Scope with illuminated Reticle to include, but not limited to, the following accessories:<br>Container Cover<br>Bristle Brush<br>Screwdriver<br>Scourer<br>Drift<br>Container Body<br>Oiler<br>Cheek Plate<br>Cleaning Rod<br>Cleaning Rod Extender<br>Cleaning Rod extender - front<br>Seven (7) magazines per weapon<br>Sling for each weapon | 478 |
| SPG-9, 73mm Smoothbore Recoilless Rifle to include the PGO-9 Optical 4x sight | 225 |

Please address any questions to the undersigned at Evdin Limited, Thermopylon 1, 6023 Larnaca Cyprus

Yours sincerely,
EVDIN Limited



Rambos Fellas
Director

Company Registration No: HE 184518
Armament Trade License of Chamber of Commerce 011100

A33

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | J | | 1 | 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | | 5. PROJECT NO. (if applicable) |
|---|---|---|---|---|
| 04 | 01-Apr-2010 | SEE SCHEDULE | | |

| 6. ISSUED BY | CODE | W91CRB | 7. ADMINISTERED BY (if other than item 6) | CODE | |
|---|---|---|---|---|---|
| US ARMY RDECOM CONTR CTR - W91CRB <br> 4118 SUSQUEHANNA AVENUE <br> ABERDEEN PROVING GROUND MD 21005-3013 | | | See Item 6 | | |

| 8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|
| TAOS INDUSTRIES, INC <br> 400 PRODUCTION AVE <br> MADISON AL 95759-0003 | 9B. DATED (SEE ITEM 11) |
| | 10A. MOD. OF CONTRACT/ORDER NO. <br> W91CRB-04-D-0025-0008 |
| CODE   0WGX9            FACILITY CODE   0WGX9 | 10B. DATED (SEE ITEM 13)   07-Dec-2007 |

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer ☐ is extended, ☐ is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (if required) |
|---|

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| X | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: <br> MUTUAL AGREEMENT OF THE PARTIES |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT:  Contractor ☐ is not, ☒ is required to sign this document and return 1 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Modification Control Number:   kwlasler101471

MODIFICATION AMOUNT: $0

THE CONTRACTOR SHALL PROVIDE 20,000 YAK-B LINKS AS CONSIDERATION FOR LATE DELIVERY. THE LINKS SHALL BE DELIVERED UPON RECEIPT OF THE EXPORT LICENSE.

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Karen M Chillcott   Commercial Director Procurement | Kathleen L. Wissler, Contracting Officer <br> TEL:                                    EMAIL: |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| _Karen M Chillcott_ <br> (Signature of person authorized to sign) | 14 Apr 2010 | BY _Kathleen L Wissler_ <br> (Signature of Contracting Officer) | 14Apr2010 |

| EXCEPTION TO SF 30 <br> APPROVED BY OIRM 11-84 | 30-105-04 | STANDARD FORM 30 (Rev. 10-83) <br> Prescribed by GSA <br> FAR (48 CFR) 53.243 |
|---|---|---|

W91CRB-04-D-0025
000604
Page 2 of 2

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

(End of Summary of Changes)

A35

CCRD-AP-BD                                        1 April 2010

MEMORANDUM FOR RECORD

SUBJECT:     Summary of Award
             TAOS
             W91CRB-04-D-0025-0006/04

TYPE OF ACTION: Modification to FMS Weapons Delivery Order 0006

BACKGROUND:  Delivery Order 0006 was awarded 7 December 2007 for Weapons for
Afghanistan.

MODIFICATION:  This no cost modification is being issued to reflect the 20,000 YAK-
B Links that TAOS is providing as consideration for late delivery.  The current delivery
date is 7 April 2010.  TAOS will not meet the current delivery date.  The Links shall be
provided upon receipt of the export license.  The revised delivery date is not yet known.
Another modification will need to be executed when the delivery date is determined.

RECOMMENDATION:  Based upon the foregoing, award of this no cost modification is
in the best interest of the Government.  Award is recommended.

Prepared by:                         Approved:

Kathleen L. Wissler                  Tara L. Casey
Contracting Officer                  Contracting Officer

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE J | PAGE OF PAGES 1    2 |
|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. 06 | 3. EFFECTIVE DATE 07-Jan-2011 | 4. REQUISITION/PURCHASE REQ. NO. SEE SCHEDULE | 5. PROJECT NO. (If applicable) |
|---|---|---|---|

| 6. ISSUED BY          CODE | W91CRB | 7. ADMINISTERED BY (If other than item 6)     CODE | |
|---|---|---|---|

US ARMY RDECOM CONTR CTR - W91CRB
4118 SUSQUEHANNA AVENUE
ABERDEEN PROVING GROUND MD 21005-3013

See Item 6

| 8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|

TAOS INDUSTRIES, INC
480 PRODUCTION AVE
MADISON AL 35758-8930

9B. DATED (SEE ITEM 11)

10A. MOD. OF CONTRACT/ORDER NO.
W91CRB-04-D-0025-0006

CODE 0WGX9     FACILITY CODE 0WGX9

X | 10B. DATED (SEE ITEM 13) 07-Dec-2007

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

[ ] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [ ] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods:
(a) By completing Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

| 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14. |
|---|

| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| X | D. OTHER (Specify type of modification and authority) 52.243-1 Changes - Fixed-Price |

E. IMPORTANT: Contractor [X] is not, [ ] is required to sign this document and return _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
Modification Control Number:   tmcbee11981
The purpose of this modification is to CHANGE and to unilaterally set delivery dates (see summary of changes)
The following are changes:

CLIN 0001AC: 49,645 AK-47 Magazines; Change FROM ON or BEFORE 07 Jan 2011 TO ON or BEFORE 31 Jan 2011
CLIN0004AA: 28 SPG-9 w /PGO Optical; Change FROM ON or BEFORE 07 Jan 2011 TO ON or BEFORE 31 Jan 2011

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) TERRY L. MCBEE / CONTRACT SPECIALIST TEL: 410-306-0877     EMAIL: terry.l.mcbee@us.army.mil |
|---|---|
| 15B. CONTRACTOR/OFFEROR _____ (Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA BY _____ (Signature of Contracting Officer) | 16C. DATE SIGNED 06-Jan-2011 |

| EXCEPTION TO SF 30 APPROVED BY OIRM 11-84 | 30-105-04 | STANDARD FORM 30 (Rev. 10-83) Prescribed by GSA FAR (48 CFR) 53.243 |
|---|---|---|

Agility v. US 13 CV 380, 00000062

W91CRB-04-D-0025
000606
Page 2 of 2

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

SUMMARY OF CHANGES

SECTION F - DELIVERIES OR PERFORMANCE

The following Delivery Schedule item for SUBCLIN 0001AC has been changed from:

| DELIVERY DATE | QUANTITY | SHIP TO ADDRESS | UIC |
|---|---|---|---|
| 07-JAN-2011 | 49,545 | N/A<br>FOB: Destination | |

To:

| DELIVERY DATE | QUANTITY | SHIP TO ADDRESS | UIC |
|---|---|---|---|
| 31-JAN-2011 | 49,545 | N/A<br>FOB: Destination | |

The following Delivery Schedule item for SUBCLIN 0004AA has been changed from:

| DELIVERY DATE | QUANTITY | SHIP TO ADDRESS | UIC |
|---|---|---|---|
| 07-JAN-2011 | 28 | N/A<br>FOB: Destination | |

To:

| DELIVERY DATE | QUANTITY | SHIP TO ADDRESS | UIC |
|---|---|---|---|
| 31-JAN-2011 | 28 | N/A<br>FOB: Destination | |

(End of Summary of Changes)

Agility v. US( 13 CV 380) 00000063

A38

FPDS-NG : TERRY,L,MCBEE-W91CRB@US.ARMY.MIL [ Award Print ]                    Page 1 of 3

| Print | Close | Help |

**Transaction Information**

Award Type: Delivery/Task Order        Prepared Date:        01/07/2011 14:42:03      Prepared User:      TERRY,L,MCBEE,W91CRB@US.ARMY.MIL
Award Status: Draft                    Last Modified Date: 01/07/2011 14:56:04      Last Modified User:  TERRY,L,MCBEE,W91CRB@US.ARMY.MIL

**Document Information**

| | Agency | Procurement Identifier | | Modification No | Trans No |
|---|---|---|---|---|---|
| Award ID: | 9700 | 0008 | | 6 | 0 |
| Referenced IDV ID: | 9700 | W91CRB04D0025 | | 0 | |

Reason For Modification:   OTHER ADMINISTRATIVE ACTION
Solicitation ID:

| | Agency Main Sub | | Initiative |
|---|---|---|---|
| | Identifier Account Account | | |
| Treasury Account Symbol: | | | Select One |

**Dates**                              **Amounts**

| | | | Previous | Current | Total |
|---|---|---|---|---|---|
| Date Signed: | 01/06/2011 | Action Obligation: | $12,603,641.00 | $0.00 | $12,603,641.00 |
| Effective Date: | 01/07/2011 | Base And Exercised Options Value: | $12,603,641.00 | $0.00 | $12,603,641.00 |
| Completion Date: | 02/18/2011 | Base And All Options Value: | $12,603,641.00 | $0.00 | $12,603,641.00 |
| Est. Ultimate | 02/18/2011 | | | | |
| Completion Date: | | Fee Paid for Use of Indefinite Delivery Vehicle: | $0.00 | | |

**Purchaser Information**

| Contracting Office Agency ID: | 2100 | Contracting Office Agency Name: | DEPT OF THE ARMY |
|---|---|---|---|
| Contracting Office ID: | W91CRB | Contracting Office Name: | W6QK RDECOM CONTR CTR |
| Funding Agency ID: | 2100 | Funding Agency Name: | DEPT OF THE ARMY |
| Funding Office ID: | W91CRB | Funding Office Name: | W6QK RDECOM CONTR CTR |
| Foreign Funding: | Foreign Funds FMS | | |

**Contractor Information**

OCR Exception:

| DUNS No: | 786495232 | Street: | 166 JETPLEX LANE |
|---|---|---|---|
| Vendor Name: | TAOS INDUSTRIES, INC | Street2: | |
| DBAN: | | City: | MADISON |
| | | State: | AL      Zip: | 36758 |
| | | Country: | UNITED STATES |
| | | Phone: | |
| | | Fax No: | |
| | | Congressional District: | ALABAMA 05 |

Show Details

**Business Category**

| Organization Type | | Socio Economic Data |
|---|---|---|
| Number of Employees | 0 | ✓ Veteran Owned Business |
| State of Incorporation | | |
| Country of Incorporation | | |
| Annual Revenue | $0 | |

**Contract Data**

| Type of Contract: | Firm Fixed Price |
|---|---|
| Multiyear Contract: | No |
| Major Program: | |
| National Interest Action: | None |
| Cost Or Pricing Data: | No |
| Purchase Card Used As Payment Method: | No |
| Undefinitized Action: | No |
| Performance Based Service Acquisition: | No - Service where PBA is not used. |

*FY 2004 and prior; 80% or more specified as performance requirement

Agility v. US( 13 CV 380) 00000064
1/7/2011

FPDS-NG : TERRY.L.MCBEE-W91CRB@US.ARMY.MIL [ Award Print ]                    Page 2 of 3

* FY 2006 and later; 50% or more specified as performance requirement

| Contingency Humanitarian Peacekeeping Operation: | Not Applicable |
| Contract Financing: | Not Applicable |
| Cost Accounting Standards Clause: | No - CAS waiver approved |
| Consolidated Contract: | No |
| Number Of Actions: | |

| Legislative Mandates | | Principal Place of Performance | |
| Clinger-Cohen Act: | No | | State | Location | Country |
| Service Contract Act: | No | Principal Place Of Performance Code: | AL | | US |
| Walsh-Healey Act: | Yes | Principal Place Of Performance County Name: | MADISON |
| Davis Bacon Act: | No | Principal Place Of Performance City Name: | MADISON |
| Interagency Contracting Authority: | Not Applicable | Congressional District Place Of Performance: | 05 |
| Other Interagency Contracting Statutory Authority: (1000 characters) | | Place Of Performance Zip Code(+4): | 35758 | -8903 |

Product Or Service Information

| Product/Service Code: | 1095 | Description: | MISCELLANEOUS WEAPONS |
| Principal NAICS Code: | 332994 | Description: | SMALL ARMS MANUFACTURING |
| Bundled Contract: | Not a bundled requirement |
| System Equipment Code: | 000 |
| Country of Product or Service Origin: | RB | SERBIA |
| Place of Manufacture: | Not a manufactured end product |
| Domestic or Foreign Entity: | Select One |
| Use Of Recovered Material: | Select One |
| InfoTech Commercial Item Category: | Not IT Products or Services |
| Claimant Program Code: | A5 | Description: | WEAPONS |
| Sea Transportation: | No |
| GFE/GFP Provided Under This Action: | Transaction does not use GFE/GFP |
| Use Of EPA Designated Products: | Meets Requirements |
| Description Of Requirement: (4000 characters) | Mortar |

Competition Information

| Extent Competed For Referenced IDV: | Full and Open Competition |
| Extent Competed: | Full and Open Competition |
| Solicitation Procedures: | Subject to Multiple Award Fair Opportunity |
| Type Of Set Aside: | Select One |
| Evaluated Preference: | Select One |
| SBIR/STTR: | Select One |
| Fair Opportunity/Limited Sources: | Fair Opportunity given |
| Other Than Full And Open Competition: | Select One |
| Local Area Set Aside: | Select One |
| FedBizOpps: | Select One |
| A76 Action: | No |
| Commercial Item Acquisition Procedures: | Commercial Item Procedures not used |
| Number Of Offers Received: | 19 |
| Small Business Competitiveness Demonstration Program: | |
| Commercial Item Test Program: | No |
| Preference Programs / Other Data | |
| Contracting Officer's Business Size Selection: | Small Business |

Agility v. US( 13 CV 380) 00000065
1/7/2011

FPDS-NG : TERRY.L.MCBEE.W91CRB@US.ARMY.MIL [ Award Print ]          Page 3 of 3

| Subcontract Plan: | Plan Not Required |
| Price Evaluation Percent Difference: | 0         % |

Agility v. US( 13 CV 380) 00000066

A41